PLANNED PARENTHOOD ASSOCIATION OF CINCINNATI, INC., APPELLEE AND CROSS-APPELLANT, *v.* PROJECT JERICHO; ANTCZAK ET AL., APPELLANTS AND CROSS-APPELLEES.

[Cite as Planned Parenthood Assn. of Cincinnati, Inc. *v.* Project Jericho (1990), 52 Ohio St. 3d 56.]

(Nos. 89-579 and 89-592—Submitted February 14, 1990—
Decided June 20, 1990.)

*Laufman, Rauh & Gerhardstein* and *Alphonse A. Gerhardstein,* for appellee and cross-appellant.

*Condit & Dressing Co., L.P.A., James J. Condit, John W. Dressing, Charles T. Lester, Jr.* and *Thomas W. Condit,* for appellants and cross-appellees.

*Peter J. Kadzik, Elaine Metlin, Frances A. Scibelli, Brown, Cummins & Brown Co., L.P.A.,* and *Amy G. Applegate,* urging reinstatement of the trial court's certification of a class for *amicus curiae,* Planned Parenthood Affiliates of Ohio, Inc.

H. BROWN, J. We must determine whether the trial court abused its discretion by finding appellants in contempt for violating the injunction under either Civ. R. 65(D) or Civ. R. 23. We hold that the trial court properly exercised the discretion it had pursuant to both Civ. R. 65(D) and Civ. R. 23.

I

*First Amendment Considerations*

The First Amendment guarantees the right to publicly communicate views and to express dissension. Demonstrators may speak, march, picket, leaflet, carry signs or otherwise act to inform or persuade others of their beliefs. These rights, however, do not include the right to imperil public safety or to harass others in exercise of their rights. *United States* v. *Dickens* (C.A.3, 1982), 695 F. 2d 765, 772, certiorari denied (1983), 460 U.S. 1092; *Galella* v. *Onassis* (S.D.N.Y. 1972), 353 F. Supp. 196, 223, affirmed in part and reversed in part (C.A.2., 1973), 487 F. 2d 986. "* * * The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. * * *" *Cox* v. *Louisiana* (1965), 379 U.S. 536, 554.

The First Amendment does not preclude reasonable restrictions relating to time, place and manner of expression so long as they (1) are content-neutral, (2) are tailored to serve a significant government interest, and (3) leave alternative channels of communication open. *United States* v. *Grace* (1983), 461 U.S. 171, 177, citing *Perry Edn. Assn.* v. *Perry Local Educators' Assn.* (1983), 460 U.S. 37, 45. See, also, *Heffron* v. *Internatl. Soc. for Krishna Consciousness, Inc.* (1981), 452 U.S. 640; *Grayned* v. *City of Rockford* (1972), 408 U.S. 104, 115; *Adderley* v. *Florida* (1966), 385 U.S. 39, 47-48, rehearing denied (1967), 385 U.S. 1020.

The injunction before us prohibits screaming, chanting, speaking or singing in a manner intended to reach or

which had the effect of reaching patients inside the clinic at 3332 Vine Street; screaming at patients entering or leaving the clinic; blocking the driveway, entrances or exits from the clinic or the public walkway in front of it; and mass picketing. The court limited the numbers of picketers to one stationary picket on the Louis Street sidewalk; one stationary picket on the Shields Street sidewalk and three moving pickets at designated locations. Limits were not placed on the numbers of pickets on the west side of Vine Street.

The injunction is not based upon the subject matter or content of speech and thus meets the first constitutional requirement of content neutrality. *Heffron, supra,* at 648.

The injunction serves a significant governmental interest. The interest is that trade and commerce be conducted unimpeded by breaches of the peace and threats to the safety of those engaged in or patronizing a lawful business. The business here is one in which patients seek medical treatment. Courts have uniformly recognized that restrictions (which meet the other constitutional tests) on demonstrations in front of medical clinics serve a legitimate public interest. *Parkmed Co.* v. *Pro-life Counselling, Inc.* (1981), 110 Misc. 2d 369, 442 N.Y. Supp. 396, modified on other grounds (1982), 91 App. Div. 2d 551, 457 N.Y. Supp. 2d 27; *O.B.Y.G. Assns.* v. *Birthright of Brooklyn & Queens, Inc.* (1978), 64 App. Div. 2d 894, 895, 407 N.Y. Supp. 2d 903, 906. See, also, *Grayned, supra,* at 117-118.

Finally, the injunction provides alternative channels of communication. Appellants are free to pass out literature, picket within reasonable limits and to express opinions. In order to express one's opinion, it is not necessary to block access to facilities or disrupt the operations of a medical clinic.

Accordingly, we find that the injunction issued by the trial court does not violate the First Amendment.

## II
### *Civ. R. 65(D)*

We must also determine whether the injunction meets the requirements for injunctions set forth in Civ. R. 65(D). Civ. R. 65(D) states:

"Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding upon the parties to the action, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of the order whether by personal service or otherwise."

### A
### *Form and Scope of Injunction*

In its order, the court stated that it was issuing the injunction because the conduct of picketers in the vicinity of the clinic and apartment building constituted a nuisance. The court was specific in its terms, and described in reasonable detail the acts to be restrained. (See Part I above.)

The injunction meets the drafting standard of the rule, that "* * * an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." 11 Wright & Miller, Federal Practice & Procedure (1973) 536-537, Section 2955; *Superior Sav. Assn.* v. *Cleveland Council of Unemployed Workers* (1986), 27 Ohio App. 3d 344, 348, 27 OBR 402, 406, 501 N.E. 2d 91, 95. We find that the in-

junction meets the requirements as to form and scope set by Civ. R. 65(D).

## B

### *Persons Bound by the Injunction*

Appellants claim the injunction is too broad because it "is against *all persons picketing.*" (Emphasis *sic.*)

Condit, Loebker, Brockhoeft and Antczak were named as defendants in the original and amended complaints. Whether or not the defendant class certification was proper (which issue will be discussed separately), those four defendants are "named parties to the action" for purposes of Civ. R. 65(D). As such, they are bound by the decree.

Whether the remaining thirteen appellants are also bound depends upon whether they are "persons in active concert or participation with [the parties to the action]."

Nonparties are bound by an injunction to ensure "that defendants [do] not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Regal Knitwear Co.* v. *NLRB* (1945), 324 U.S. 9, 14. The determination of breadth must be made on the facts of each case. *Vuitton et Fils S.A.* v. *Carousel Handbags* (C.A.2, 1979), 592 F. 2d 126, 130. Persons acting in concert or participation with a party against whom an injunction has been issued must have actual notice of the injunction in order to be bound by it. Civ. R. 65(D); *Northeast Women's Center, Inc.* v. *McMonagle* (C.A.3, 1989), 868 F. 2d 1342, certiorari denied (1989), 493 U.S. ____, 107 L. Ed. 2d 210, 110 S. Ct. 261; *Neshaminy Water Resources Auth.* v. *Del-Aware Unlimited, Inc.* (1984), 332 Pa. Super. 461, 469-470, 481 A. 2d 879, 883.

Appellants claim that they acted independently and therefore are not bound by the court's order. The facts belie the claim. The trial court found that all appellants received actual notice of the injunction and that each intentionally violated it. Appellants collectively acted to achieve a common goal: to stop patients from receiving treatment at the clinic and to prevent the clinic from providing medical services. The evidence supports a finding that appellants' acts were part of a continuing course of concerted activity.

If a valid restrictive order has been issued, a court has the statutory and inherent power to entertain contempt proceedings and punish disobedience of that order. R.C. 2705.02(A); *Zakany* v. *Zakany* (1984), 9 Ohio St. 3d 192, 9 OBR 505, 459 N.E. 2d 870, at syllabus. The trial court did not abuse its discretion in finding all seventeen appellants in contempt. *State, ex rel. Ventrone,* v. *Birkel* (1981), 65 Ohio St. 2d 10, 11, 19 O.O. 3d 191, 192, 417 N.E. 2d 1249, 1250. We affirm the decision by the court of appeals on this issue.

## III

### *Class Action Issues*

Appellee filed a notice of appeal from the appellate court's reversal of the conditional certification of the defendant class action.

## A

### *Mootness*

The trial court dissolved the preliminary injunction, apparently because the appellee closed the Vine Street clinic and moved back to its former quarters. The issues raised by the defendant class certification are not moot because they are "capable of repetition, yet evading review." *Southern Pacific Terminal Co.* v. *Interstate Commerce Comm.* (1911), 219 U.S. 498, 515.

## B

### Does Civ. R. 23 Permit Certification of a Defendant Class?

A trial court has broad discretion in determining whether a class action may be maintained. We will not disturb that determination, absent an abuse of discretion. *Marks* v. *C.P. Chemical Co.* (1987), 31 Ohio St. 3d 200, 31 OBR 398, 509 N.E. 2d 1249; *Vinci* v. *American Can Co.* (1984), 9 Ohio St. 3d 98, 9 OBR 326, 459 N.E. 2d 507. An abuse of discretion connotes more than an error of law or judgment; it implies an attitude on the part of the trial judge that is unreasonable, arbitrary or unconscionable. *Ojalvo* v. *Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St. 3d 230, 232, 12 OBR 313, 315, 466 N.E. 2d 875, 877; *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157, 16 O.O. 3d 169, 173, 404 N.E. 2d 144, 149.

The class action is an invention of equity, designed to facilitate adjudication of disputes involving common issues between multiple parties in a single action.[2] The common-law rule governing such actions was codified in Federal Equity Rule 38 and eventually recodified in current Fed. R. Civ. P. 23.[3]

Most class suits are brought by a class of plaintiffs. Defendant class suits are less familiar. However, they have a long history in English common law and have been available in the United States since the 1800s.[4] Civ. R. 23 (along with its federal counterpart)[5] clearly contemplates defendant class actions. It reads in part:

"(A) *Prerequisites to a class action.* One or more *members of a class may* sue or *be sued as representative parties* on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or *defenses* of the representative parties are typical of the claims or *defenses* of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(B) *Class actions maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:

"(1) the prosecution of separate actions by or *against individual members of the class* would create a risk of * * *." (Emphasis added.)

Both defendant and plaintiff class actions can promote judicial economy and prevent unfairness and needless expense to parties.

The advantages of a unitary adjudication of common issues outweigh the difficulties inherent in determining whether a defendant class meets the requirements of the rule. A class suit may be especially useful in a case where putative class members refuse to identify themselves or deliberately act to avoid being controlled in law. A defendant class action can also ensure uniform conduct by a plaintiff toward all defendants.

---

[2] 7A Wright, Miller & Kane, Federal Practice & Procedure (1986), Section 1751 (hereinafter "Wright & Miller").

[3] H. Newberg, 1 Newberg on Class Actions (2 Ed. 1985) 374-375, Section 4.45 (hereinafter "Newberg").

[4] 1 Newberg, at 372-375, Section 4.45.

In 1853 the Supreme Court upheld an action against a defendant class, based upon the well-established common-law rule permitting such actions. *Smith* v. *Swormstedt* (1853), 57 U.S. (16 How.) 288.

[5] Civ. R. 23 adopted Federal Rule 23 as amended in 1966, with one exception, found in subdivision (F). 4 Anderson's Ohio Civil Practice (1989), Section 158.07, at 635. This subdivision is not relevant to the issues presented here.

Rule 23, however, was written primarily with plaintiff classes in mind. The rule does not set forth specific procedures to be used in bringing defendant class suits. Thus, application of the rule to defendant class actions is awkward and requires considerations different from those applicable to plaintiff class actions.[6]

Before certifying a defendant class action, a trial court must, however, make the same affirmative findings required under the rule for a plaintiff class action. *Ellis* v. *O'Hara* (E.D. Mo. 1985), 105 F.R.D. 556, 563. See, also, *Warner* v. *Waste Management, Inc.* (1988), 36 Ohio St. 3d 91, 94, 521 N.E. 2d 1091, 1094-1095; A. Miller, An Overview of Federal Class Actions: Past, Present and Future (1978), 4 Justice System J. 197 (hereinafter "Federal Class Actions").

Under subdivision (A) of Rule 23, the court must find two implicit and four explicit prerequisites: (1) that a class exists; (2) that the class representatives are members of the class; (3) that joinder is impractical because of numerosity of class members; (4) that there is commonality of issues; (5) that claims or defenses of representatives are typical of claims or defenses of members of the class and (6) adequacy of representation. The court must also find that the case fits within one of the categories in subdivision (B).

## C
### Prerequisites of a Class Action

In certifying the class herein, the trial court defined the class as: "[p]ersons picketing between the South curb of Louis Ave and the North curb of Shields Avenue and on both sides of Vine Street from Louis Ave to Shields

---

[6] Wolfson, Defendant Class Actions (1977), 38 Ohio St. L.J. 459 (hereinafter "Wolfson").

Ave who have been personally served with this order as well as their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive personal service of the order."

"Persons picketing" included "* * * persons present in the area referred to in this order who are carrying protest and informational signs, passing out literature, speaking publicly, or otherwise engaged in activity intended to inform, influence and persuade the public about matters of public interest, including abortion."

The class description raises two concerns. The first concern is that persons could become class members after the date of certification if such persons picketed in the pertinent geographical zone.

Civ. R. 23 does not require a class certification to identify the specific individuals who are members so long as the certification provides a means to identify such persons. 7A Wright & Miller, *supra,* at 115, 118, Section 1760; see, also, *Warner, supra,* at 96, 521 N.E. 2d at 1096. The fact that members may be added or dropped during the course of the action is not controlling. The test is whether the means is specified at the time of certification to determine whether a particular individual is a member of the class.

Here, the means to identify the class was specified at the time of certification. Members were "[p]ersons picketing between the South curb of Louis Ave and the North curb of Shields Avenue and on both sides of Vine Street from Louis Ave to Shields Ave * * *."

The second concern stems from the trial court's requirement that personal service of the class order be made upon a picketer before such person could be found to be a member of

the class. The court apparently was attempting to ensure that picketers knew what actions were prohibited by the injunction before they became subject to the court's contempt powers. But by making notice a condition of membership, the court blurred the distinction between class membership and notice of the injunction for contempt purposes.

Greater clarity would have been achieved if the court had described the class and then, elsewhere in the order, stated that class members who received personal service of the order could be held in contempt for violating it. This observation, however, is made with the benefit of hindsight. We find no prejudice to these appellants arising from the definition of class membership.

The requirement that the class representatives be members of the class is also met. The record indicates that the class representatives (Condit, Brockhoeft, Loebker and Antczak) each picketed the clinic.

The third requirement is that the class be so numerous that joinder of all members is impracticable. "Impracticable" does not mean "impossible." *Gentry* v. *C & D Oil Co.* (W.D. Ark. 1984), 102 F.R.D. 490, 493; Federal Class Actions, *supra,* at 203. In the instant case, persons were picketing in sufficient numbers to support a finding that joinder of all defendants was impracticable.

The next consideration is whether the action raises questions of law or fact common to the class. Total commonality of issues is not needed. Commonality is satisfied when there is a " 'common nucleus of operative facts.' " *Marks, supra,* at 202, 31 OBR at 400, 509 N.E. 2d at 1253. Here, the issues generate from a common nucleus, to wit, the competing interests of those who wish to operate and patronize a medical clinic versus the interests of those who wish to stamp out that operation. Significant common issues arise with respect to freedom of speech, freedom of assembly, preservation of the peace and the breadth of the court's injunctive power. There is a common nucleus of operative fact and this requirement is satisfied.

The defenses or claims of the class representatives must be typical of the defenses or claims of the class members. They need not be identical. Federal Class Actions, at 204; 7A Wright & Miller, *supra,* Section 1764; see, also, *Twyman* v. *Rockville Hous. Auth.* (D.C. Md. 1983), 99 F.R.D. 314, 321. This prerequisite has generated criticism. Professor Miller fails to see "* * * any independent purpose served by the provision." Federal Class Actions, *supra,* at 204. He states that if the other requirements of subdivision (A) are met, typicality also will be met. *Id.* Also, courts are authorized by Civ. R. 23(C)(4) to permit class treatment for only some of the issues or divide the original class into subclasses. 7A Wright & Miller, *supra,* at 228, 262, Section 1764.

In the proceedings below, the representative parties attacked the constitutionality of the injunction, contending that the injunction would impermissibly deny rights of free speech. The same assertions would be made by putative class members. Since there is "no express conflict between the representatives and the class," *Warner, supra,* at 98, 521 N.E. 2d at 1097, we deem this requirement satisfied.

The last requirement of subdivision (A) is that representative parties must "fairly and adequately protect the interests of the class." This determination is especially significant when

a defendant class is being considered.[7] This determination is one of fact, dependent upon the circumstances of each case. *McGowan* v. *Faulkner Concrete Pipe Co.* (C.A.5, 1981), 659 F. 2d 554. Since the determination is one of judicial discretion, the trial court's finding will not be overturned unless it is shown to be an abuse of discretion. *Harmsen* v. *Smith* (C.A.9, 1982), 693 F. 2d 932, 943, certiorari denied (1983), 464 U.S. 822.

This determination is important because members of a defendant class will be bound by the judgment. *Hansberry* v. *Lee* (1940), 311 U.S. 32, 41-43. Of course, absent class members are not precluded from raising individual defenses. For example, in the case before us, absent class defendants may assert that they are not class members; that the representatives failed to adequately protect their interests; that they received no notice of the injunction or that they did not violate it. They could not, however, attack the validity of the injunction once that issue has been litigated by class representatives. See 1 Newberg on Class Actions (2 Ed. 1985), Sections 4.46, 4.48; Wolfson, Defendant Class Actions (1977), 38 Ohio St. L.J. 459, 477-478.

Adequacy of representation contains two parts: adequacy of the representatives and adequacy of counsel. *Warner, supra,* at 98, 521 N.E. 2d at 1097. Defendant class representatives usually will be deemed adequate when defenses are typical and it is apparent that common issues will be vigorously defended. 1 Newberg, *supra,* at 377, Section 4.46. The interests of the representatives cannot be antagonistic to those of the class. *Warner, supra,* at 98, 521 N.E. 2d at 1097.

Here, the class representatives presented a thorough defense based on the grounds that the injunction was overbroad, vague and not binding upon defendants either as named parties or as persons acting independently. The record discloses that these defenses were typical of those of class members. Appellants suggest no defenses that could have been raised but were not. No showing has been made that the interests of the representatives are antagonistic to the interests of class members. Further, and as noted, an absent class member is not precluded from raising a unique defense in a later proceeding.

The final prong to the adequacy of representation test is that counsel must be competent to handle the action. Both courts below found defendants' counsel to be adequate. No contrary allegations have been made. The competency of defense counsel has been established by the record, including the briefs and oral arguments presented.

Accordingly, we find that all prerequisites of a class action have been met.

### D
### *Subdivision (B) Categories*

Before certifying a class suit, a court must also find that the case fits

---

[7] Along with the other considerations evoked by the requirement, defendant class actions pose another concern. In the defendant class action, the plaintiff chooses the representative, who may be reluctant to accept the role. A reluctant representative may perform poorly. However, the rule requires an adequate representative, not a willing one. So long as the representative has a personal stake in the common issue to be decided, the representative will be likely to defend the interests of the class. Note, Defendant Class Actions (1978), 91 Harv. L. Rev. 630, 639-640. In the case before us, the representation was professional and more than adequate.

within one of the subdivision (B) categories.

When a class is certified under subdivision (B)(3), defendant class members may choose to opt out of the class.[8] Thus, this category is not suited to defendant class actions.

Subdivision (B)(1)(b) is usually used in cases in which claims are made by numerous persons against funds insufficient to satisfy all claims. *Warner, supra,* at 95, 521 N.E. 2d at 1095; also see examples of cases using the subdivision in Fed. R. Civ. P. 23 Advisory Committee Note to 1966 amendment. The instant case does not involve a limited fund.

Civ. R. 23(B)(2) applies to a case in which "* * * *the party opposing the class has acted or refused to act* on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole * * *." (Emphasis added.) The category is used when injunctive or declaratory relief is sought.

The language of (B)(2) makes it difficult to apply in the defendant class context, where a *plaintiff* seeks injunctive relief against the defendant class. A literal reading of the subdivision seems to demand that it be the *defendant* who seeks relief and that the plaintiff be "the party opposing the class."

Some courts have refused to certify defendant classes under (B)(2), based upon a literal approach. See, *e.g., Henson* v. *East Lincoln Twp.* (C.A.7, 1987), 814 F. 2d 410, certiorari granted (1988), 484 U.S. 923, motions to defer further proceedings granted (1988), 484 U.S. 1001, 1057; *Thompson* v. *Bd. of Edn. of Romeo Community*

*Schools* (C.A.6, 1983), 709 F. 2d 1200, 1204.

Other courts have held (B)(2) to be appropriate where the plaintiff seeks injunctive relief and is challenging the uniform conduct of multiple defendants. See, *e.g., United States* v. *Rainbow Family* (E.D. Tex. 1988), 695 F. Supp. 314, 320; *Marcera* v. *Chinlund* (C.A.2, 1979), 595 F. 2d 1231, 1238, vacated on other grounds *sub nom. Lombard* v. *Marcera* (1979), 442 U.S. 915; *Doss* v. *Long* (N.D. Ga. 1981), 93 F.R.D. 112, 114.

We need not resolve the conflict regarding interpretation of (B)(2), because we find that the defendant class action was properly certified under (B)(1)(a).

A class action may be certified under (B)(1)(a) when separate actions against individual class members would create a risk of "* * * inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class * * *." Examples of cases amenable to certification under this subdivision are those involving "* * * the rights and duties of riparian owners, *or of landowners' rights and duties respecting a claimed nuisance* * * *." Fed. R. Civ. P. 23 Advisory Committee Note to 1966 amendment. (Emphasis added.)

Here, appellee argues that separate actions against individual picketers could result in different verdicts concerning the same conduct. Different and incompatible standards of conduct for appellee and its staff would thus be established. Appellee would be placed in a situation where it might proceed against a certain in-

---

[8] Civ. R. 23(C)(3); Newberg, *supra,* at Section 4.60. Cross-appellant gave the right to opt out as its reason for not asking that the class be certified under this subdivision.

dividual's conduct as violative of a court injunction, but be unable to proceed against another individual engaging in the same conduct. One purpose of a class action is to avoid such situations.

We find that the trial court did not abuse its discretion in certifying the defendant class action because it meets the prerequisites of Civ. R. 23(A) and fits within subdivision (B)(1)(a).[9]

## IV
### *Award of Attorney Fees*

Our final task is to consider appellants' argument that the trial court erred by assessing them with attorney fees for the contempt proceedings. A trial court may, within its discretion, include attorney fees as part of the costs taxable to a defendant found guilty of civil contempt. *State, ex rel. Fraternal Order of Police,* v. *Dayton* (1977), 49 Ohio St. 2d 219, 3 O.O. 3d 360, 361 N.E. 2d 428, syllabus. Appellants repeatedly violated the terms of the injunction, despite warnings and offers to explain the injunction by the trial judge. Some appellants apparently even participated in burning the injunction. There was no abuse of discretion on the part of the trial court, and we affirm the court of appeals on this point. We reinstate the judgment of the trial court.

*Judgment affirmed in part and reversed in part.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and RESNICK, JJ., concur.

---

[9] We have addressed the knotty issues raised by the trial court's certification of a defendant class action. Those issues were raised by the trial court's order and the decision in the court of appeals reversing that order. However in this case, it is difficult to see, as a practical matter, how the decision to certify a defendant class added to the reach of the trial court's powers under Civ. R. 65(D).