[Cite as *Mozingo v. 2007 Gaslight Ohio, L.L.C.*, 2016-Ohio-4828.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| ROBERT MOZINGO | | C.A. No. 27759 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| 2007 GASLIGHT OHIO, LLC, et al. | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellants | | CASE No. CV 2010-05-3516 |

DECISION AND JOURNAL ENTRY

Dated: July 6, 2016

---

HENSAL, Judge.

{¶1} George and Patricia Waliga and 2007 Gaslight Ohio, LLC appeal an order of the Summit County Court of Common Pleas that granted Robert Mozingo's amended motion to certify a class action. For the following reasons, this Court affirms.

I.

{¶2} Mr. Mozingo has lived at the Gaslight Village Mobile Home Park in Tallmadge since 2002. At the time he moved into the park, the Waligas owned it. Gaslight Ohio purchased the park in 2007. Mr. Mozingo has never had a written lease with the park's owners, but he has received a copy of the park's rules. Under those rules, he is responsible for paying for the natural gas he uses each month.

{¶3} According to the Waligas, when they first purchased the park, they included their tenants' gas usage in their monthly rent. Around 2001, however, they began receiving extremely high monthly gas bills, so they decided to place a meter on each unit and charge everyone for

their gas use separately. They hired a third-party company to read the individual meters for them each month.

{¶4} According to Mr. Mozingo, after residing at the park for several years, he discovered that his monthly gas bills contained an undisclosed $5.00 fee. He also discovered that he was paying a higher rate for gas than the park was paying the gas company. He, therefore, filed a class action complaint against the Waligas and Gaslight Ohio on behalf of all of its tenants, alleging breach of contract and violations of Revised Code Section 3733.11.[1] After he moved to certify a class, the trial court held a hearing on his motion. Following the hearing, the court granted the motion. On appeal, this Court reversed. *Mozingo v. 2007 Gaslight Ohio, LLC*, 9th Dist. Summit Nos. 26164, 26172, 2012-Ohio-5157. We determined that, in examining whether to certify a class, the trial court had incorrectly determined the merits of Mr. Mozingo's claims. We also determined that the court had failed to address whether the class Mr. Mozingo proposed to certify was identifiable and unambiguous and whether the statute of limitations prevented him from being the class's sole representative. We remanded the case so that the trial court could conduct a rigorous analysis of all of the prerequisites for class action certification.

{¶5} On remand, Mr. Mozingo filed an amended motion to certify class action, which the trial court granted. The Waligas and Gaslight Ohio have jointly appealed its decision. To the extent that their assignments of errors overlap, we will consider them together.

II.

WALIGAS' ASSIGNMENT OF ERROR I

THE TRIAL COURT AGAIN ABUSED ITS DISCRETION AND MADE A MISTAKE OF LAW BY SPECIFICALLY DETERMINING THE MERITS OF THE CASE DURING CLASS CERTIFICATION PROCEEDINGS.

---

[1] The language of Section 3733.11 has since moved to Section 4781.40.

GASLIGHT OHIO'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION IN MAKING A DETERMINATION OF THE MERITS OF PLAINTIFF'S ALLEGED CLAIMS UNDER CHAPTER 3733 OF THE OHIO REVISED CODE.

{¶6}   The Waligas and Gaslight Ohio argue that, as in its first class-certification order, the trial court improperly determined the merits of Mr. Mozingo's action when it decided whether to certify a class.  In our prior decision, we explained that a trial court may not make any merit findings when it decides the appropriateness of class certification.  *Mozingo* at ¶ 10, quoting *Hill v. Moneytree of Ohio, Inc.*, 9th Dist. Lorain No. 08CA009410, 2009-Ohio-4614, ¶ 13.  Since that decision, the Ohio Supreme Court has clarified that, in undertaking the rigorous analysis that a trial court must conduct to determine whether a plaintiff has satisfied the prerequisites for class certification under Civil Rule 23, the court may "prob[e] the underlying merits of the plaintiff's claim[.]"  *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d 231, 2013-Ohio-3019, syllabus.  It may not, however, "engage in free–ranging merits inquiries" or "adjudicate the case[.]"  *Id.* at ¶ 33, quoting *Amgen v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. __, 133 S.Ct. 1184, 1191, 1194-1195 (2013).

{¶7}   The Waligas and Gaslight Ohio argue that the trial court went beyond mere probing of the merits of Mr. Mozingo's case and actually determined the merits in its order.  They point to several passages in the order that, they allege, resemble language that this Court held was improper in the prior certification order.  Specifically, the trial court wrote in its new order:

> All current and former residents at the specific location of the Gaslight Village Mobile Home Park were subjected to the undisclosed markup and paid for, or were charged for, the surcharged gas usage after the Park initiated the sub-metering system.

> * * *

From March 2001 through the filing of the complaint, each time the Defendants invoiced tenants for gas usage which included an undisclosed mark up fee, a separate statutory violation occurred, which constituted a new breach of contract.

\* \* \*

Plaintiff and each class member suffered the same injury by the Park and the relief sought is the same for Plaintiff as it is for the other class members.

\* \* \*

In this case, Plaintiff's claims and those of the putative class members are derived from the same concealment and over-charging of utility fees in violation of Ohio law.

According to the Waligas and Gaslight Ohio, the above language demonstrates that the trial court did not merely probe the merits of Mr. Mozingo's case, but improperly adjudicated the case.

{¶8} This Court has explained that, "[w]hen a trial court considers a motion to certify a class action, it accepts as true the allegations in the complaint * * *." *Hill*, 2009-Ohio-4614, at ¶ 8. From the context of the trial court's order, it appears that the court was applying that rule when it wrote the "[a]ll current and former residents" statement set out above. The court made the statement in the course of examining whether the proposed class is identifiable and unambiguous. It, therefore, accepted as true, for purposes of resolving Mr. Mozingo's motion, his assertion that all of the park's current and former residents have been subject to the same gas-price mark-up.

{¶9} The trial court made the second above statement during its analysis of whether the proposed class's claims are barred by the statute of limitations. Again, the court was addressing "purported[ ]" violations of Section 4781.40, and its decision must viewed through that lens. Accepting Mr. Mozingo's allegations as true for the purpose of determining whether to certify a

class, the court determined that, if the defendants included an undisclosed mark-up in its invoices each month, each instance would constitute a separate statutory violation and a new breach of contract from which the statute of limitations period would run.

{¶10} The third challenged statement appears in the section of the court's order addressing whether Mr. Mozingo would fairly and adequately protect the interests of the class. The court found that, since Mr. Mozingo and the proposed class had suffered the same purported injuries and were seeking the same relief, he would be an adequate class representative.

{¶11} The fourth statement appears during the trial court's analysis of Civil Rule 23(B)(3). The court explained that the rule requires questions that are common to the class members to predominate over questions that affect only individual members. It also requires a class action to be a superior method of fairly and efficiently adjudicating the controversy. In his complaint, Mr. Mozingo alleged that the Waligas and Gaslight Ohio had engaged in two inappropriate activities. First, they failed to indicate in every gas bill that the bills included a $5.00 charge for meter reading. Second, they charged their tenants more for gas than they were paying the gas company. On review of the trial court's order, it appears from the context that the language referring to the defendants' "concealment" and "over-charging" activities was simply the court's short-hand way of describing the nature of Mr. Mozingo's claims.

{¶12} The Waligas identify three additional passages, which they assert violated the prohibition on determining the merits. They note that the court wrote:

> The number of affected past and current residents is estimated to be in the hundreds. To bring each claim individually to court, on substantially identical statutory violations, would be unmanageable and inefficient.
>
> * * *

The issue of whether the mark up was disclosed or not (hence, in violation of law or not) is a common question of fact for all members of the class, not just [Mozingo].

\* \* \*

This is a matter of statutory violation and breach of contract and the damages from these claims are distinctly owed from one Defendant or the other.

According to the Waligas, these passages demonstrate that the court has already determined that they violated the statute, that the violation affected hundreds of individuals, that any undisclosed markups automatically violated Section 4781.40, and that they or Gaslight Ohio definitely owe damages to the claimants. We believe, however, that the court was simply accepting Mr. Mozingo's allegations, particularly his claim that the Waligas and Gaslight Ohio's conduct breached the Section 4781.40, as true for the purpose of determining the motion for class certification and then assessing, in light of those presumptions, whether it was appropriate for the case to proceed as a class action.

{¶13} The Waligas and Gaslight Ohio argue that the language of the trial court's order is essentially the same as its previous order and that its substance is unchanged. There are important differences, however, between the two orders. In its previous order, the trial court found that "[e]ach of these class members was undisputably charged a mark[-]up to their gas fees without disclosure as required by statute." *Mozingo*, 2012-Ohio-5157, at ¶ 9. It also found that Mr. Mozingo "has never received written notice of the mark[-]up to the gas fees" from the Waligas or Gaslight Ohio. *Id.* It further wrote that "[i]f written notice was not issued to the residents, it appears to this court that collection of gas fees was improper." *Id.* This Court concluded that those passages did not "bear upon the propriety of class certification, but instead amount to an attempt, 'contrary to the applicable law, to reach the merits of the claim.'" *Id.*, quoting *Hill*, 2009-Ohio-4614, at ¶ 11.

{¶14} In its first order, the trial court did not refer to the Ohio Supreme Court's directive in *Hill* that, when considering a motion to certify a class, it had to "accept[ ] as true the allegations in the complaint, without considering the merits of those allegations * * *." *Hill* at ¶ 8. Accordingly, we could not presume that any suspect language in the order complied with *Hill*. In its present order, the trial court acknowledged the rule from *Hill* and specifically explained that its certification analysis was "[a]ccepting [Mr. Mozingo's] allegations as true and without reaching the merits of [the] case." In its present order, the court has also repeatedly emphasized that the facts it included in its analysis were "allege[d]." Furthermore, in its current order, the court has not characterized the Waligas and Gaslight Ohio's acts as "improper" or indicated that they failed to perform any acts that were "required by statute." *Mozingo* at ¶ 9.

{¶15} Thus, upon review of the record, we conclude that, although the occasional conclusive phrasing utilized by the trial court in its ruling is unfortunate, the trial court did not improperly inquire into the merits of Mr. Mozingo's case when ruling on his amended motion to certify a class action. The Waligas' and Gaslight Ohio's first assignments of error are overruled.

WALIGAS' ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION BY DETERMINING THAT MOZINGO HAS STANDING AND/OR IS A MEMBER OF THE CLASS HE SEEKS TO CERTIFY.

{¶16} The Waligas next argue that Mr. Mozingo does not have standing to be the class's sole representative because he was not a tenant of the park at the time they began making tenants pay for their gas usage. The Waligas note that, in his complaint, Mr. Mozingo alleged that they did not give their tenants proper notice about the change in the natural gas system, including details about how charges would be calculated and the fact that there would be a charge for reading the meters. The Waligas argue that, even accepting those allegations as true, Mr.

Mozingo could not have suffered the same injury as the other class members because he did not move into the park until a year after the change was implemented.

{¶17} As we recognized in our prior decision in this case, one of the prerequisites to class certification is that the named class representative must actually be a member of the class he seeks to certify. *Mozingo*, 2012-Ohio-5157, at ¶ 14. This requires that the representative have the same interest and have suffered the same injury shared by all members of the class that he seeks to represent. *Hamilton v. Ohio Savs. Bank*, 82 Ohio St.3d 67, 74 (1998).

{¶18} Upon review of the record, we note that the Waligas made this same "standing" argument in their prior appeal. In analyzing the "membership prerequisite" in our prior decision, however, we did not identify any problem with the fact that Mr. Mozingo was not a tenant at the time the Waligas began charging tenants for their gas use. *See Mozingo* at ¶ 14. The only error we recognized as to the membership prerequisite was the fact that the trial court failed to analyze whether Mr. Mozingo's claims were barred by the statute of limitations. Under the doctrine of law of the case, "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). We, therefore, conclude that the Waligas may not re-argue its standing argument in this appeal.

{¶19} The Waligas also argue that the trial court incorrectly concluded that Mr. Mozingo's claims have not expired under the statute of limitations. The trial court held that his claims have not expired because the statute of limitations did not begin to run until he discovered that the Waligas and Gaslight Ohio had charged him a meter-reading fee and overcharged him for his gas use. It also concluded that they would have committed a new breach of the statutory

requirements and a new breach of contract each time they sent Mr. Mozingo a gas bill with improper charges.

{¶20} The Waligas make two arguments regarding the statute of limitations in their brief. The first concerns whether the limitations period runs from the date that a statutory violation and/or breach of contract occurred or whether it runs from the date when the breach is discovered. The second concerns whether the trial court improperly applied the continuing tort doctrine.

{¶21} The focus of the Waligas' arguments is the trial court's determination that Mr. Mozingo is a member of the proposed class. The relevant statute of limitations question, therefore, is whether the Waligas committed a breach of their oral contract with Mr. Mozingo and/or committed a statutory violation each and every time they sent him a new gas bill. If they did, then Mr. Mozingo is a class member regardless of whether the statute of limitations runs from the date of the breaches or the date he discovered them. For example, if there was a new breach each month, Mr. Mozingo may recover for any violations that occurred within the six-year period before he filed a complaint, even if the discovery rule does not apply to his claims. *See* R.C. 2305.07 (providing that the limitations period for breach of an oral contract and for statutory violations is six years). In comparison to other class members, Mr. Mozingo would be in no worse position than them as to the months for which they could seek damages. If, on the other hand, the statute of limitations did not begin to run until Mr. Mozingo discovered the breach, none of his claims are barred and he is, therefore, also an appropriate class

representative. Thus, with respect to the issue of whether Mr. Mozingo is a member of the class, it does not matter when his claims began to run.[2]

**{¶22}** The Waligas also argue that the court incorrectly applied the continuing tort doctrine. Under that doctrine, "a cause of action accrues at the time the tortious conduct ceases." *Spriestersbach v. Ohio Edison Co.*, 9th Dist. Lorain No. 95CA006026, 1995 WL 641146, *5 (Nov. 1, 1995). Contrary to the Waligas' assertion, however, the court did not determine that Mr. Mozingo's action involved a tort claim with continuing harm. Instead, it determined that the Waligas may have breached a series of separate month-long contracts, each with their own separate damages. *See Apicella v. PAF Corp.*, 17 Ohio App.3d 245, 248-249 (8th Dist.1984) (explaining that, because tenants were on a month-to-month tenancy, each renewal at the incorrect rate constituted a new breach). Accordingly, the Waligas' continuing tort argument is without merit. Upon review of the record, we conclude that the Waligas have failed to establish that the trial court abused its discretion when it determined that Mr. Mozingo is a member of the class he sought to certify. *See Mozingo*, 2012-Ohio-5157, at ¶ 7 (identifying standard of review for class-certification questions). The Waligas' second assignment of error is overruled.

## WALIGAS' ASSIGNMENT OF ERROR III

> THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO CONDUCT A RIGOROUS ANALYSIS WITH REGARD TO THE REQUIREMENTS THAT THE CLASS BE IDENTIFIABLE AND UNAMIBGUOUS.

**{¶23}** The Waligas next argue that Mr. Mozingo failed to present any evidence indicating that there is an identifiable and unambiguous class. *See Warner v. Waste*

---

[2] We note that the Waligas have not contested the scope of the trial court's certification order and have not challenged its determination that Mr. Mozingo has a separate claim for each month he received a gas bill with improper charges. We, therefore, conclude that it is not necessary to resolve in this appeal whether the discovery rule applies to the class's claims.

*Management, Inc.*, 36 Ohio St.3d 91 (1988), paragraph two of the syllabus (providing that an identifiable class must exist before certification is allowed and that the definition of the class must be unambiguous). According to the Ohio Supreme Court, Civil Rule 23 does not require a class certification to identify the specific individuals who are members of a class "so long as the certification provides a means to identify such persons." *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho*, 52 Ohio St.3d 56, 63 (1990). "The fact that members may be added or dropped during the course of the action is not controlling. The test is whether the means is specific at the time of certification to determine whether a particular individual is a member of the class." *Id.* The class description, therefore, must be sufficiently definite that it is administratively feasible to determine whether someone is a member of the class. *Hamilton*, 82 Ohio St.3d, at 71-72. In other words, the "class definition must be precise enough 'to permit identification within a reasonable effort.'" *Id.* at 72, quoting *Warner* at 96.

{¶24} The Waligas argue that Mr. Mozingo failed to present any evidence from which the trial court could find that the class is identifiable and unambiguous. They argue that, in light of the high rate of attrition at the park, there is no plausible way to identify the putative class members and their current whereabouts. They also argue that Mr. Mozingo's allegation that he can use the records of unspecified third-party vendors and computer-based technology to locate potential class members is entirely speculative.

{¶25} In *Warner*, the trial court certified a class consisting of anyone who lived, worked, resided, or owned property within a five mile radius of the defendant's dump site. The Ohio Supreme Court explained that the class was unidentifiable, noting that it even included transients who had for one reason or another briefly "worked" in the specified area. *Warner*, 36 Ohio St.3d, at 96. In *Hamilton*, on the other hand, the Court held that a class that would encompass

any mortgagors on whose residential loans a certain method was used to calculate their interest was definite enough to satisfy the identifiable class requirement. *Hamilton*, 82 Ohio St.3d, at 72-74. The Supreme Court explained that, to determine whether an individual is a member of the class, the trial court would only need to look at the actions or practices of the bank. In *Project Jericho*, the Court held that a class that consisted of persons picketing along a certain street was identifiable under Rule 23 even though the members of the class might change over time. *Project Jericho*, 52 Ohio St.3d, at 63.

{¶26} The trial court's order in this case specified two sub-classes: 1) current and former residents who resided at the Park from the time the Waligas implemented the individual metering system to the time they sold the park and who were required to pay the Waligas for their natural gas usage, and 2) current and former residents of the park who resided at it after Gaslight Ohio purchased it and who were required to pay Gaslight Ohio for their natural gas usage. The court explained that, because all of the current and former residents of the park were subject to the allegedly improper charges, it will be administratively feasible to determine whether a particular person is a member of the class. It noted that Mr. Mozingo can identify the specific members of the class by reviewing the park's occupancy records, public records, and third-party vendor records.

{¶27} Contrary to the Waligas' assertion, Mr. Mozingo did not have to be able to identify the specific individuals who are members of the class at the time he moved for class certification for the class to be certified. *Id.* He merely had to identify the means by which they can be identified. *Id.* We conclude that, since the class consists only of current and former residents of the Park, the trial court did not abuse its discretion when it determined that the class is identifiable and unambiguous. The Waligas' third assignment of error is overruled.

WALIGAS' ASSIGNMENT OF ERROR IV

THE TRIAL COURT ABUSED ITS DISCRETION IN CONCLUDING THAT QUESTIONS OF LAW AND FACT COMMON TO THE MEMBERS OF THE CLASS PREDOMINATE OVER QUESTIONS AFFECTING ONLY INDIVIDUAL MEMBERS AND THAT CLASS ACTION IS THE SUPERIOR METHOD OF ADJUDICATION.

GASLIGHT OHIO'S ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING PLAINTIFF'S AMENDED MOTION TO CERTIFY THIS CASE AS A CLASS ACTION.

**{¶28}** The Waligas and Gaslight Ohio also argue that the trial court incorrectly concluded that Mr. Mozingo satisfied the requirements for class certification under Civil Rule 23(B). Rule 23(B) provides that a class action may be maintained if the prerequisites in Rule 23(A) are met and if any of its subsections are also met. In this case, the trial court determined that Rule 23(B)(3) applied. Under that subsection, the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members[.]" It must also find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* "This inquiry requires a court to balance questions common among class members with any dissimilarities between them[.]" *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, ¶ 29. If common questions predominate, the court should then consider whether there are any alternative methods for resolving the controversy or whether the class action method is superior. *Id.*

**{¶29}** The Waligas argue that individual issues predominate and that the court will have to conduct a mini-trial for every class member to determine if they are entitled to damages. In particular, the court will need to examine how much gas each tenant used, how much they were charged, how much they paid for the gas, what the terms of their individual contracts with the

park included, which date they learned about the alleged statutory violations or breaches of contract, whether they were previously involved in a case against the park in which they would have been required to raise the improper gas charges as a counterclaim, whether they were evicted from the park, whether res judicata applies, which versions of the park rules they were under, and whether they received sufficient notice of the change to the gas system. The Waligas contend that these factual inquiries will have to be done on an individual basis to determine whether an individual's recovery is barred by the statute of limitation or res judicata and to determine whether they suffered any damages or are subject to the Waligas' counterclaim.

**{¶30}** Gaslight Ohio argues that the court failed to conduct a rigorous analysis of Rule 23(B)(3). It also argues that the court's analysis is internally inconsistent and that the class definition is too broad for common issues to predominate. In particular, it notes that the class includes any tenant who received a gas bill with improper charges, even though recovery would be limited to those who actually paid the improper charges and who do not owe anything else to Gaslight Ohio. According to Gaslight Ohio, most of the proposed class members got their gas for free, so they did not suffer any injury. Gaslight Ohio also argues that many of the class members' recovery amounts will be offset by the unpaid rent and other sums they owe it, which the trial court should have considered during its Rule 23(B) analysis. Gaslight Ohio further argues that the analysis under Rule 23(B) is more demanding than simply considering whether there are common questions to all the class members.

**{¶31}** The trial court noted that the putative class members' claims are derived from the same alleged concealment and over-charging activities of the Waligas and Gaslight Ohio. It reasoned that, because all of the sub-class members were residents of the park during the same time periods, they would have received the same notices and been subject to the same markups.

It, therefore, found that whether the mark-up was disclosed or not is a common question of fact for all of the class members. It also found that the sub-classes were cohesive enough that proof that the park owners were charging improper fees or mark-ups could apply to all their claims.

{¶32} The purpose of Rule 23(B)(3) is "to bring within the fold of maintainable class actions cases in which the efficiency and economy of common adjudication outweigh the interests of individual autonomy." *Hamilton*, 82 Ohio St.3d, at 80. In examining how Rule 23(B)(3) should be applied in *Hamilton*, the Ohio Supreme Court explained that, because each respective subclass involved a similar or identical form contract, there were common questions of law and fact to each of them. *Id.* It also noted that no one had attempted to institute a parallel action or to intervene, and that is was unlikely that there would be any other suits in light of the relatively small recovery and "massive duplication of time, effort, and expense that would be involved." *Id.* It explained that, although the class of 2,700 members would be "numerically substantial," it was not so large as to be unwieldy. *Id.* The Court also explained that class action treatment would "eliminate any potential danger of varying or inconsistent judgments, while providing a forum for * * * people who individually would be without effective strength to litigate their claims." *Id.* The Court further explained that a trial court should not deny class certification solely on the basis that the claimants may have different damages. *Id.* at 81.

{¶33} Upon review of the record, it appears that all of the tenants of the park were subject to the same natural gas policies, regardless of whether they had a written lease or rented on a month-to-month basis. Accordingly, it was reasonable for the trial court to conclude that the common questions of whether the Waligas and Gaslight Ohio breached their contracts or the Revised Code when they charged their tenants a meter-reading fee and an increased rate for gas "represent a significant aspect of the case [which is] able to be resolved for all members of the

class in a single adjudication." *Stammco*, 2013-Ohio-3019, at ¶ 56, quoting *Schmidt v. Avco Corp.*, 15 Ohio St.3d 310, 313 (1998). Class action certification will allow common questions such as the statute of limitations and whether the defendants committed a breach of contract and/or the Revised Code to be answered consistently as to all the class members. We also agree with the trial court that, under *Hamilton*, the fact that each of the class members may have suffered a different amount of damages does not automatically make the class unmanageable. Since the Waligas and Gaslight Ohio allegedly were charging the same fee and upcharge to all of their tenants each month, it would seem that the court could calculate each class members' damages off of their monthly gas bills using a straight-forward mathematical calculation. In addition, the fact that the trial court might end up spending a significant amount of the time on individual issues does not defeat class certification. *See Pyles v. Johnson*, 143 Ohio App.3d 720, 738 (4th Dist.2001). The Ohio Supreme Court has indicated that "clockwatching is neither helpful nor desirable in determining the propriety of class certification." *Hamilton*, 82 Ohio St.3d, at 85. We, therefore, conclude that the trial court did not abuse its discretion when it determined that common questions predominate in this action.

**{¶34}** The Waligas also argue that the trial court abused its discretion when it found that a class action would be the superior method of adjudicating the purported classes' claims. They argue that the court's evaluation of superiority "lacks any substance." The Waligas note that they have not owned the park in over seven years and yet no one else had attempted to file an action against them for their gas billing, which began over 14 years ago. They also argue that the court would be in a better position to weed out potential claimants if each case was brought separately, especially when it comes to figuring out how much of the potential recovery should be set-off.

**{¶35}** "[I]n determining whether a class action is a superior method of adjudication, the court must make a comparative evaluation of the other procedures available to determine whether a class action is sufficiently effective to justify the expenditure of judicial time and energy involved therein." *Schmidt*, 15 Ohio St.3d at 313. The four factors that are particularly relevant are

> (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.

*Id*. at 314, quoting Civ.R. 23(B)(3). "Analysis of these factors ensures that the policy objectives of Civ.R. 23(B) are given weight and permits a court to balance the efficiency and economy of the class action device against the need to ensure the fair representation of the interests of otherwise unrelated entities." *In re Consol. Mtge. Satisfaction Cases*, 97 Ohio St.3d 465, 2002-Ohio-6720, ¶ 13.

**{¶36}** In *In re Consolidated Mortgage Satisfaction Cases*, the plaintiffs filed 12 separate cases against their mortgagors, each alleging that the lenders violated Revised Code Section 5301.36. *Id*. at ¶ 1. In analyzing whether a class action would be a superior method of achieving a fair and efficient adjudication of the controversy, the Court applied the factors in Rule 23(B)(3). Regarding the first factor, it explained that, because each borrower sought only a small amount of damages, they did not have the financial wherewithal to undertake the expense of litigation. Together, however, they could spread out the costs and more readily attack the practices of the lenders. *Id*. at ¶ 14. Regarding the second and third factors, it explained that the "desirability of the class action is evident," since allowing separate actions "would severely clog the docket of the common pleas court." *Id*. at ¶ 15. Regarding the fourth factor, the Court

explained that, although there would be some difficulty in managing the class action, the trial court had given "adequate thought to the problems that might arise and determined that any risk was overpowered by the circumstances supporting class action certification." *Id*. at ¶ 16. It concluded that a class action would be the preferable method "for dealing with evidence of a party's recurring malfeasance because the ability to avoid duplication of a court's time, effort, and resources is an important and relevant consideration." *Id*. at ¶ 17.

{¶37} The trial court found that a class action was the superior manner of adjudicating the controversy, explaining that, if the class members brought their claims separately, the Waligas and Gaslight Ohio would be subject to the same discovery requests over and over again. It also explained that certification has the advantage of answering whether there was a violation as to any of the class members in one fell swoop, although noting that any of the class members could opt out of the class if they wanted. It noted that some class members would have minimal damages, making the expense of litigation unfeasible without a class action. It also noted that there did not appear to be any other cases pending on the issues. It further explained that a class action would promote judicial economy, opining that it would be unmanageable for the courts if each claimant filed a separate action.

{¶38} Upon review of the record, we conclude that the trial court considered appropriate factors in determining whether a class action was the superior manner to resolve the parties' claims. The court concluded that a class action is the superior method for many of the reasons that the Supreme Court said a class action was appropriate in *In re Consolidated Mortgage Satisfaction Cases*. The Waligas and Gaslight Ohio have not demonstrated that any of the court's findings about the advantages of a class action are not supported by the record. Accordingly, we cannot say that the court abused its discretion in evaluating the predominance

and superiority prongs of Rule 23(B)(3).  The Waligas' fourth assignment of error and Gaslight Ohio's second assignment of error are overruled.

## III.

**{¶39}** The Waligas' and Gaslight Ohio's assignments of error are overruled.  The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

SCOTT J. FLYNN, Attorney at Law, for Appellants.

JONATHAN D. GREENBERG, Attorney at Law, for Appellant.

BRIAN W. ZIMMERMAN, Attorney at Law, for Appellant.

THOMAS J. CONNICK, Attorney at Law, for Appellee.

GEORGE W. COCHRAN, Attorney at Law, for Appellee.