[Cite as *M.E.H. v. C.K.H.*, 2025-Ohio-1394.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| M.E.H. | : | |
| | : | |
| Petitioner-Appellee | : | C.A. No. 30298 |
| | : | |
| v. | : | Trial Court Case No. 2024 DV 00065 |
| | : | |
| C.K.H. | : | (Appeal from Common Pleas Court- |
| | : | Domestic Relations) |
| Respondent-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on April 18, 2025

. . . . . . . . . . .

RYAN L. THOMAS, Attorney for Respondent-Appellant

LORI R. CICERO, Attorney for Petitioner-Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Respondent-appellant C.K.H. appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, denying and dismissing his motion for contempt against the Dayton Police Department ("DPD") and DPD Sergeant Roberta Bailey. For the reasons set forth below, we affirm.

## I.     Factual and Procedural Background

{¶ 2} On January 11, 2024, M.E.H. filed a petition for a domestic violence civil protection order ("CPO") against her husband, C.K.H.  An ex parte CPO was entered that same day.  The CPO contained a provision prohibiting C.K.H. from possessing, using, carrying or obtaining any deadly weapon during the effective dates of the order.  It further contained the following provision:

**RESPONDENT SHALL TURN OVER ALL DEADLY WEAPONS** owned by Respondent or in Respondent's possession to the law enforcement agency that serves Respondent with this Order no later than receipt of [the] CPO.

Any law enforcement agency is authorized to accept possession of deadly weapons pursuant to this paragraph and hold them in protective custody for the duration of this Order.

Law enforcement shall immediately notify the Court upon receiving Respondent's deadly weapons for protective custody as set forth in the Order.

Upon the expiration or termination of the Order and if a full hearing order is not issued or consent agreement approved, Respondent may reclaim any deadly weapons held in protective custody by law enforcement pursuant to this Order unless Respondent is otherwise disqualified as verified by a check of the NCIC protection order file.

(Emphasis in original.)

**{¶ 3}** DPD served the CPO on C.K.H. and, according to C.K.H.'s appellate brief, it seized 14 firearms from his residence.

**{¶ 4}** On July 1, 2024, the trial court entered a judgment dismissing M.E.H.'s petition for a CPO and the ex parte order it had issued, noting that M.E.H. had appeared before the court and orally requested the dismissal of the case. The dismissal order provided that C.K.H. was entitled to retrieve his weapons from the Montgomery County Sheriff's Office.

**{¶ 5}** According to C.K.H., he presented the order to the DPD, but staff "refused to honor the entry" because it was directed to the Montgomery County Sheriff's Office, not the Dayton Police Department. Therefore, C.K.H. filed a motion requesting that the trial court enter a new order directed to the DPD. The trial court granted the motion and entered the following order, which is identical to the one filed on July 1, 2024, in all respects except the named law enforcement agency:

> The parties should immediately check with the Dayton Police Department to determine whether property, **including weapons, if any**, was taken from the Respondent. If the property, **including weapons, if any**, is in the custody of the Dayton Police Department, it may be picked up by presenting this entry to the property room, Dayton Police Department. . . . Property, **including weapons, if any**, left in the possession of the Dayton Police Department 30 days from the date of this entry is hereby found to be abandoned and therefore shall be subject to a forfeiture.

(Emphasis in original.)

{¶ 6} Thereafter, C.K.H. filed a motion seeking an order finding the DPD and its agent, Seargeant Roberta Bailey, in contempt for failing to return his weapons after he presented the revised order to the department. In the motion, C.K.H. alleged that, when he presented the order to the DPD, he was informed that Bailey "was under the impression that [he] was under a firearms disability and that she had no obligation to comply with this Court's Order."

{¶ 7} The trial court denied the motion without a hearing, finding that neither the DPD nor Bailey was a party to the action.

{¶ 8} C.K.H. appeals.

## II.    Contempt

{¶ 9} The sole assignment of error asserted by C.K.H. states:

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION FOR CONTEMPT.

{¶ 10} C.K.H. contends the trial court erred in denying his motion for contempt, because courts "have inherent and statutory authority to punish and hold nonparties in contempt for the disobedience of valid court orders."

{¶ 11} "Contempt is defined in general terms as disobedience of a court order." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554 (2001). Contempt involves "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v.*

*Tomaszczyk*, 27 Ohio St.2d 55 (1971), paragraph one of syllabus. Courts typically distinguish between civil and criminal contempt proceedings. *State v. Chavez-Juarez*, 2009-Ohio-6130, ¶ 24 (2d Dist.). " 'Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order.' " *Id.* at 25, quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "Criminal contempt sanctions, however, are punitive in nature and are designed to vindicate the authority of the court." *Id.*, citing *Denovchek v. Trumball Cty. Bd. of Commrs.*, 36 Ohio St.3d 14, 15 (1988). "Thus, civil contempts are characterized as violations against the party for whose benefit the order was made, whereas criminal contempts are most often described as offenses against the dignity or process of the court." *Russo* at 551, citing *State v. Kilbane*, 61 Ohio St.2d 201, 204-205 (1980). "A common pleas court has both inherent and statutory power to punish contempts . . . ." *Burt v. Dodge*, 65 Ohio St.3d 34, 35 (1992), citing *Zakany v. Zakany*, 9 Ohio St.3d 192 (1984), syllabus.

{¶ 12} As C.K.H. correctly notes, we have held that trial courts may hold non-parties in contempt. *Chavez-Juarez* at ¶ 35. However, that power is not unlimited, as we have also noted that a court may only do so "under the proper circumstances." *Id.*, quoting *Scarnecchia v. Rebhan*, 2006-Ohio-7053, ¶ 9 (7th Dist.).

For example, in *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho*, 52 Ohio St.3d 56 (1990), the Supreme Court of Ohio considered whether picketers who were not parties to an action between Planned Parenthood and certain anti-abortion groups could be held in contempt for violating terms of a preliminary injunction that had been issued.

The court concluded that the non-parties were bound by the terms of the injunction, because they were "persons in active concert or participation with [the parties to the action]." This was based on the theory that "[n]onparties are bound by an injunction to ensure 'that defendants [do] not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.' " The non-parties must have had actual notice of the injunction, however, in order to be bound.

The Supreme Court of Ohio concluded that the picketers had actual knowledge of the injunction, and that the trial court did not abuse its discretion in holding them in contempt.

*Id.* at ¶ 35-37.

{¶ 13} Similarly, in *State ex rel. Rogers v. Republic Environmental Sys., Inc.,* 2010-Ohio-5523 (2d Dist.), we held that a non-party corporation could be held in contempt. In that case, Republic Environmental Systems, Inc. and the Ohio Environmental Protection Agency entered into a consent agreement concerning cleanup of hazardous materials located at a property owned by Republic. *Id.* at ¶ 1-2. While that action was pending, Republic sold the property to McCabe Corporation. The purchase agreement between the Republic and McCabe established that the purchase was made subject to the consent agreement. *Id.* The State subsequently filed a motion to hold both Republic and McCabe in contempt for failure to comply with the agreement, and the trial court found them both to be in contempt. *Id.* at ¶ 5, ¶ 7. We affirmed, finding that McCabe had been

in active concert or participation with Republic. *Id.* at ¶ 51.

{¶ 14} A review of case law reveals that non-parties have also been found in contempt when they represent the interests of a party. *See Citicasters Co. v. Stop 26-Riverbend, Inc.*, 2002-Ohio-2286, ¶ 65-92 (7th Dist.) (holding an attorney in contempt for failing to ensure a client's compliance with a temporary restraining order); *Adkins v. Hansen*, 2002-Ohio-2676 (5th Dist.) (noting that the trial court would have had jurisdiction for purposes of indirect civil contempt over a non-party insurance company to the extent that the insurance company represented the interests of the defendants in the action); *Advantage Bank v. Waldo Pub., L.L.C.*, 2009-Ohio-2816 (3d Dist.) (the principal shareholder in a corporation could be held in contempt for actions of the corporation).

{¶ 15} In this case, there is nothing in the record to demonstrate that DPD or Bailey represented the interest of either party to this action or that they were in active concert or participation with either party. Thus, the above-cited cases upon which C.K.H. relies do not provide a basis for holding DPD or Bailey in contempt.

{¶ 16} Furthermore, we note that "[i]n order to be 'guilty of contempt for failure to comply with a court order, there must be an order with which the person charged has failed to comply.'" *Washington Mut. Bank v. Beatley*, 2020-Ohio-4658, ¶ 26 (10th Dist.), quoting *Godward v. Kory*, 2011-Ohio-5265, ¶ 20 (5th Dist.). "In general, '[p]roceedings for contempt for noncompliance will not lie where the order does not expressly address the alleged act of disobedience.'" *Id.* at 28, quoting *Cortland United Methodist Church v. Knowles*, 2007-Ohio-3383, ¶ 34 (11th Dist.). "[A] court order cannot be enforced in contempt unless the order was 'clear and definite, unambiguous, and not subject to dual

interpretations.' " *Toledo v. State*, 2018-Ohio-2358, ¶ 23, quoting *State ex rel. Cincinnati Enquirer v. Hunter*, 2013-Ohio-5614, ¶ 25.

**{¶ 17}** The trial court order in this case merely stated that C.K.H. "may" pick up his property. It did not contain any express or affirmative command, order, or directive to either the DPD or Bailey requiring the return of the weapons. Without such, the failure to return C.K.H.'s property cannot be the basis for finding them in contempt. *See South Euclid Fraternal Order of Police, Lodge 80 v. D'Amico*, 29 Ohio St.3d 50, 52 (1987).

**{¶ 18}** The assignment of error is overruled.


### III. Conclusion

**{¶ 19}** The sole assignment of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.