[Cite as *Kacin v. Ohio Bur. of Motor Vehicles*, 2025-Ohio-5815.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jack Kacin, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 24AP-689 |
| v. | : | (Ct. of Cl. No. 2023-00204JD) |
| Ohio Bureau of Motor Vehicles, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 30, 2025

**On brief:** *DannLaw, Marc E. Dann, Brian D. Flick, Jeffrey A. Crossman*, and *Marita I. Ramirez*; *Zimmerman Law Offices, P.C.*, and *Thomas A. Zimmerman, Jr.*, for appellant. **Argued:** *Andrew M. Engel.*

**On brief:** *Dave Yost*, Attorney General, and *Peter E. DeMarco*, for appellee.

**On brief:** *Vorys, Sater, Seymour and Pease LLP, Marcel C. Duhamel*, and *Karey E. Werner*, for appellee. **Argued:** *Marcel C. Duhamel.*

APPEAL from the Court of Claims of Ohio

BOGGS, J.

{¶ 1} Plaintiff-appellant, Jack Kacin, appeals the judgment of the Court of Claims of Ohio, which denied his motion for class certification. For the following reasons, we reverse the Court of Claim's judgment and remand the matter to that court for further proceedings.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} Kacin is a retired veteran of the United States Army who has a service-connected disability and is "totally and permanently disabled." (Mar. 17, 2023 Compl. at

¶ 20.) He filed this class-action complaint against defendant-appellee, the Ohio Bureau of Motor Vehicles ("BMV"), on March 17, 2023. His claims concern the BMV's implementation of a statutorily created program that provides vehicle registration and certain license plates free of charge to qualified veterans with service-connected disabilities.

{¶ 3} R.C. 4503.41 established special license plates for qualified disabled veterans. A "disabled veteran having a service-connected disability rated at one hundred per cent by the veterans' administration[] may apply to the registrar [of motor vehicles] for the registration of the disabled veteran's personal motor vehicle." R.C. 4503.41(A) (effective July 3, 2019). "Upon the receipt of an application for registration of a motor vehicle under this section, and presentation of satisfactory evidence of disability, the registrar or deputy registrar shall issue to the applicant a set of license plates, which shall be red, white, and blue in color and shall, in addition to the letters and numbers ordinarily inscribed thereon, be inscribed with the word 'veteran' and imprinted with the international wheelchair symbol" ("disabled veteran license plate"). R.C. 4503.41(B). An eligible veteran under R.C. 4503.41(A) is not required to pay registration fees, service fees, local motor vehicle taxes, or other fees associated with the registration. R.C. 4503.41(A). Under R.C. 4503.41, an eligible, disabled veteran may register as many vehicles as are titled and registered in the veteran's name, but the veteran is entitled to waiver of registration fees and taxes only on the first registration. R.C. 4503.41(C).

{¶ 4} In 2018, the General Assembly passed Sub.H.B. 194, which enacted R.C. 4503.29 and instructed the director of veterans' services and the registrar of motor vehicles to "develop and maintain a program to establish and issue nonstandard[1] license plates recognizing military service and military honors pertaining to valor and service" ("specialty military license plates"). R.C. 4503.29(A) (effective June 29, 2018). The law required the director of veterans' services and the registrar of motor vehicles to jointly adopt rules for the purpose of establishing the program within nine months. R.C. 4503.29(B) (effective June 29, 2018). Specialty military license plates under R.C. 4503.29 are distinct from disabled veteran license plates under R.C. 4503.41, and they are not limited to veterans who are disabled. As originally enacted, R.C. 4503.29 required any applicant for a specialty

---

[1] In amendments to R.C. 4503.29 that took effect in 2021, the General Assembly changed references to "nonstandard license plates" to "specialty license plates." *See* 2021 Am.Sub.H.B. No. 74.

military license plate to pay all applicable taxes and fees.  R.C. 4503.29(D)(2) (effective June 29, 2018).

{¶ 5}   The following year, the General Assembly amended R.C. 4503.29, in part to grant veterans with qualifying disabilities under R.C. 4503.41 the option to obtain a specialty military license plate under R.C. 4503.29 at no charge.  The amended statute, effective October 17, 2019, includes R.C. 4503.29(D)(2)(b), which states:

> Any disabled veteran who qualifies to apply to the registrar for the registration of a motor vehicle under section 4503.41 of the Revised Code without the payment of any registration taxes or fees, may apply instead for registration of the motor vehicle under this section. *The disabled veteran applying for registration under this section is not required to pay any registration taxes or fees* as required by sections 4503.038, 4503.04, 4503.10, 4503.102, and 4503.103 of the Revised Code, any local motor vehicle tax levied under Chapter 4504 of the Revised Code, or any fee charged under section 4503.19 of the Revised Code for up to two motor vehicles, including any motor vehicle registered under section 4503.41 of the Revised Code. . . . Upon receipt of an application for registration of the motor vehicle and presentation of any documentation the registrar may require by rule, the registrar shall issue to the applicant the appropriate motor vehicle registration and a set of license plates authorized under this section and a validation sticker, or a validation sticker alone when required by section 4503.191 of the Revised Code.

(Emphasis added.)

{¶ 6}   Kacin visited the BMV's deputy registrar office in Shelby County, Ohio, in May 2021 to register his vehicle and obtain a specialty military license plate with the fee waiver.  He produced as proof of his eligibility various documents, including a letter from the United States Department of Veterans Affairs ("VA") stating he is a 100 percent service-connected disabled military veteran and his DD-214 certificate of release from active duty. The deputy registrar refused to provide Kacin a specialty military license plate free of charge and told Kacin the only license plate available free of charge was the disabled veteran license plate.  Kacin paid for his registration and specialty military license plate in May 2021 and again in May 2022, when the same office again denied him a fee waiver.

{¶ 7}   Beginning in June 2021, Kacin regularly corresponded with the BMV regarding his position that the BMV was misapplying the Ohio Revised Code by denying

eligible disabled veterans a specialty military license plate without charge. As of May 2022, however, the BMV's response continued to be that it was "working to get the issue resolved." (Kacin Dep., Ex. 6.)

{¶ 8} Kacin filed this action on March 17, 2023 in the Court of Claims. Kacin states in his complaint that he brings this action on behalf of himself and a class of similarly situated individuals, defined as "All 100% disabled veterans who paid registration fees to a Deputy Registrar for the State of Ohio for specialty military plates on or after October 20, 2019." (Mar. 17, 2023 Compl. at ¶ 28.) Kacin alleges that deputy registrars, acting on behalf of the BMV, exceeded their statutory authority by collecting fees for specialty military license plates from 100 percent service-connected disabled veterans and that the BMV has been unjustly enriched by his payment and other similarly situated putative class members who have conferred a benefit on the BMV, by paying fees and taxes for specialty military license plates to which they were entitled free of charge. In his prayer for relief, Kacin seeks an award to himself and class members of the amounts they paid to the BMV in connection with the erroneously charged fees.

{¶ 9} On March 30, 2023, less than two weeks after Kacin filed this action, the BMV issued a press release acknowledging its mistake and offering to refund overcharged veterans. The press release stated, in part, "The BMV recently determined that it did not implement a change in Ohio law that allows certain disabled veterans to receive up to two free disabled veteran license plates and/or [specialty] military license plates." (Riggins Dep., Ex. 2.) It continued, "The BMV is in the process of contacting all veterans who were improperly charged, and refunds for these veterans will be processed within the next month." *Id.* The BMV admits it did not make specialty military license plates available at no cost to eligible disabled veterans within the time required by the General Assembly and that an eligible disabled veteran was unable to obtain a free specialty military license plate from October 17, 2019 to April 30, 2023.

{¶ 10} The BMV issued refunds to those veterans who purchased a specialty military license plate and who also received a disabled veteran license plate. Devon Riggins, the State of Ohio's Chief of Vehicle Information Services, testified in her deposition, "those are the registrants that we know are a hundred percent service connected [disabled], thereby making them eligible for a refund." (Riggins Dep. at 61.) In other words, a veteran's receipt

of a disabled veteran license plate under R.C. 4503.41(A) established to the BMV's satisfaction that the veteran was also eligible to receive a specialty military license plate free of charge. Using that criteria, the BMV issued 4,387 refunds, totaling $535,885, to more than 3,600 disabled veterans. Riggins stated there was no other way to identify from the BMV's records which veterans who paid for a specialty military license plate would have been eligible to receive that license plate free of charge because of a 100 percent service-connected disability. *Id.* at 63. She conceded, however, that other veterans, who did not apply for a disabled veteran license plate, plausibly paid for a specialty military license plate despite being eligible to receive that license plate free of charge. *Id.* at 65.

{¶ 11} The BMV did not refund Kacin's payments for his specialty military license plates, because Kacin had not been issued a disabled veteran license plate. *Id.* at 70. He therefore was not identified by the criteria the BMV used to determine those 100 percent service-connected disabled veterans who were entitled to a refund.

{¶ 12} On May 22, 2024, Kacin filed a motion pursuant to Civ.R. 23, for certification of a class, defined as:

> All 100% disabled veterans who paid registration fees and/or taxes on or after October 17, 2019 to a Deputy Registrar for the State of Ohio for (i) a specialty Military License Plate(s), for which registration taxes and fees should have been waived pursuant to O.R.C. § 4503.29(D)(2)(b), or (ii) a regular vehicle license plate because the Deputy Registrar was charging more for a special[ty] Military License Plate.

(May 22, 2024 Pl.'s Mot. for Class Certification at 6.) The Court of Claims denied Kacin's motion, finding he failed to establish by a preponderance of the evidence each of the requirements for class certification under Civ.R. 23(A) and (B). Kacin filed a timely appeal, challenging the Court of Claim's denial of certification as to the first subclass only—100 percent disabled veterans who paid registration fees and/or taxes on or after October 17, 2019 to a Deputy Registrar for a specialty military license plate, for which registration taxes and fees should have been waived pursuant to R.C. 4503.29(D)(2)(b).[2]

---

[2] The Court of Claims denied certification of the second subclass—"[a]ll 100% disabled veterans who paid registration fees and/or taxes on or after October 17, 2019 to a Deputy Registrar for the State of Ohio for. . . a regular vehicle license plate because the Deputy Registrar was charging more for a special[ty] Military License Plate"—because Kacin is not a member of that subclass, and Kacin does not challenge that holding on appeal.

{¶ 13} On November 12, 2025, this court ordered the parties to submit supplemental briefs on the threshold issue whether the Court of Claims had subject-matter jurisdiction over the claims presented in Kacin's complaint in light of Ohio case law holding that claims for the return of funds wrongfully collected by the state are grounded in equity. The parties filed a joint supplemental brief on November 24, 2025, arguing that the claims raised here are grounded in law, not in equity, and that the Court of Claims had exclusive original jurisdiction over those claims.

## II.  SUBJECT-MATTER JURISDICTION

{¶ 14} Before turning to Kacin's assignments of error, we briefly address the threshold jurisdictional matter on which we requested supplemental briefing.  "Because a court is powerless to hear a case without subject-matter jurisdiction, a court may sua sponte raise the issue of subject-matter jurisdiction" and dismiss the case if it finds jurisdiction lacking.  *Pointer v. Smith*, 2021-Ohio-2247, ¶ 8 (10th Dist.).  An appellate court may sua sponte consider whether the trial court possessed subject-matter jurisdiction.  *George v. Ohio Dept. of Human Servs.*, 2005-Ohio-2292, ¶ 29 (10th Dist.).

{¶ 15} To determine whether the Court of Claims has jurisdiction over Kacin's claims, we must decide whether those claims seek legal or equitable relief.  By the Court of Claims Act, the General Assembly waived the state's sovereign immunity in most instances and created the Court of Claims, which has "exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in [R.C.] 2743.02."  R.C. 2743.03(A)(1).  Pursuant to the Court of Claims Act, the state is now subject to being sued for legal claims in the Court of Claims.  *Cleveland v. Ohio Bur. of Workers' Comp.*, 2020-Ohio-337, ¶ 10.  Sovereign immunity, however, did not bar claims for equitable relief, which have always been cognizable against the state in the courts of common pleas.  *Id.* And under R.C. 2743.02(A)(1), "To the extent that the state has previously consented to be sued, this chapter has no applicability."  Therefore, claims for solely equitable relief against the state must continue to be brought in the courts of common pleas, not in the Court of Claims.  If Kacin's claims are legal claims, they were properly filed and considered in the Court of Claims, but if they are equitable claims, the Court of Claims lacked subject-matter jurisdiction.

{¶ 16} Kacin seeks for himself and for members of the proposed class restitution of the amounts paid in connection with erroneous charges by the BMV. "Restitution can be either legal or equitable relief, depending on the bases for the plaintiff's claim and the 'nature of the underlying remedies sought.' " *Cleveland* at ¶ 11, quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212-213 (2002).

{¶ 17} In *Ohio Hosp. Assn. v. Ohio Dept. of Human Servs.*, 62 Ohio St.3d 97, 105 (1991), citing *Bowen v. Massachusetts*, 487 U.S. 879, 895 (1988), the Supreme Court of Ohio held that "reimbursement of monies withheld pursuant to an invalid administrative rule is equitable relief, not money damages, and is consequently not barred by sovereign immunity." The Supreme Court quoted the distinction between money damages (legal relief) and specific remedies (equitable relief), as stated in *Bowen*: " ' "Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.' D. Dobbs, *Handbook on the Law of Remedies* 135 (1973)." ' " (Emphasis in original.) *Ohio Hosp. Assn.* at 105, quoting *Bowen* at 895, quoting *Maryland Dept. of Human Resources v. Dept. of Health & Human Servs.*, 763 F.2d 1441, 1446 (10th Cir. 1985).

{¶ 18} This court has stated, "*Ohio Hosp. Assn.* has generally been applied in cases in which the plaintiff claims the state agency has wrongfully *collected* certain funds; the courts apply *Ohio Hosp. Assn.* to conclude that the action for wrongful collection is grounded solely in equity." (Emphasis in original.) *Morning View Care Ctr.-Fulton v. Ohio Dept. of Job & Family Servs.*, 2004-Ohio-6073, ¶ 19 (10th Dist.). *See also Santos v. Ohio Bur. of Workers' Comp.*, 2004-Ohio-28, ¶ 17 (action seeking restitution of monies collected under an unconstitutional subrogation statute was "an action to correct the unjust enrichment of the BWC [and sought] the return of specific funds wrongfully collected" and, thus, presented an equitable claim). In *Morning View*, the court distinguished *Ohio Hosp. Assn.* and concluded that the relief sought was legal because, unlike in *Ohio Hosp. Assn.*, review of the complaint and the language of the applicable statute did not "yield[] certainty as to the particular, identifiable funds to which the claimant was entitled." *Id.* at ¶ 27.

{¶ 19} The Supreme Court of Ohio revisited the distinction between equitable and legal claims for restitution in *Cleveland*, in which it explained:

> Historically, a *legal claim* for restitution was one in which the
> plaintiff " ' 'could not assert title or right to possession of

> particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him.' " (Emphasis deleted.) *Great-West* at 213, quoting 1 Dobbs, *Law of Remedies*, Section 4.2(1), at 571 (2d Ed.1993). An *equitable claim* for restitution was one in which "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.*

(Emphasis in original.) *Cleveland* at ¶ 11. It went on to cite the more recent United States Supreme Court case of *Montanile v. Bd. of Trustees of the Natl. Elevator Industry Health Benefit Plan*, 577 U.S. 136, 144-145 (2016), which involved claims by an employee benefits plan regulated by the Employee Retirement Income Security Act of 1974 to recover subrogation from a plan participant's settlement from a tortfeasor, which funds the plan participant claimed to have spent. The United States Supreme Court noted that the plan had an equitable lien by agreement that attached to the plan participant's settlement fund when he obtained title to that fund, and the plan's remedy—enforcement of that lien against specifically identifiable funds within the plan participant's possession and control—would have been equitable had the plan immediately sued to enforce its lien against the settlement fund. But the court continued, "if there is not a specifically identifiable fund—or traceable items on which the money from the fund was spent—to seize, . . . [t]he plaintiff had 'merely a personal claim against the wrongdoer'—a quintessential action at law." *Id.* at 146, quoting Restatement of the Law, Restitution, § 215 (comment a, at 866 (1936)). In other words, only if the funds subject to the plan's lien remained specifically identifiable and traceable was the claim to recover them a claim in equity.

{¶ 20} In *Cleveland*, the city sought to recover allegedly inflated premiums it had paid to the Bureau of Workers' Compensation ("BWC"). In holding that the city's claim was a legal claim, the Supreme Court of Ohio stated:

> Cleveland's premiums went into a general insurance fund, R.C. 4123.30, i.e., they were not kept separate from payments made by other public employers. Once Cleveland's premium payment was deposited into the fund, it became commingled with the premium payments from other employers. And even if we considered the state insurance fund itself to be a specific fund, Cleveland paid the last funds it seeks to recover in 2009. It is inconceivable how money belonging to Cleveland could "clearly be traced to particular funds or property" in the BWC's

possession, *see Great-West*, 534 U.S. at 213 . . . (Historically, an equitable claim for restitution was one in which "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession").

*Cleveland* at ¶ 17. *See also State ex rel. Ohio Bur. of Workers' Comp. v. O'Donnell*, 2023-Ohio-428, ¶ 17.

{¶ 21} In their joint supplemental brief, filed pursuant to this court's November 12, 2025 order, the parties argue that *Cleveland* controls the question of the Court of Claims' subject-matter jurisdiction and that it requires the conclusion that Kacin's complaint sets out legal claims within the Court of Claims' exclusive, original jurisdiction. The parties state that any recovery in this case would come from pooled accounts into which license-plate revenues, along with other highway-related monies collected by the state, have been deposited, and from which monies have been distributed for transportation-related purposes, as described in Article XII, Section 5a of the Ohio Constitution. Based on the Supreme Court of Ohio's decision in *Cleveland* and the parties' submissions about the flow of taxes and fees collected by the BMV, we agree that any money rightfully belonging to Kacin and putative class members cannot be traced to a particular fund or property in the BMV's position and that the claims asserted here are therefore claims for legal relief, which were required to be made in the Court of Claims.

## III. ASSIGNMENTS OF ERROR

{¶ 22} We now turn to Kacin's four assignments of error, which state:

[1.] The trial court erred in denying Plaintiff's motion for class certification.

[2.] The trial court erred in finding the proposed Class was not identifiable.

[3.] The trial court erred in finding that Civ.R. 23(B)(1)(b) was not met and that each putative Class member's claim would require review of the totality of circumstances pertaining to each individual to determine whether Defendant was unjustly enriched.

[4.] The trial court erred in finding that predominance pursuant to Civ.R. 23(B)(3) was not met because of purported individual questions regarding identification of Class

members, the existence of classwide injury, and whether Defendant was unjustly enriched on a classwide basis.

(Appellant's Brief at viii-ix.) For ease of discussion, we will address the assignments of error out of order. After reviewing the requirements for class certification under Civ.R. 23 and this court's standard of review, we will begin with Kacin's second assignment of error.

## IV. DISCUSSION

### A. Class actions under Civ.R. 23

{¶ 23} "A class action is 'an exception to the rule that litigation is conducted by and on behalf of the individual named parties only[.]' " *Cullen v. State Farm Mut. Auto. Ins. Co.*, 2013-Ohio-4733, ¶ 11, quoting *Califano v. Yamasaki*, 422 U.S. 682, 700-701 (1979). It is "an invention of equity, designed to facilitate adjudication of disputes involving common issues between multiple parties in a single action." *Planned Parenthood Assn. of Cincinnati v. Project Jericho*, 52 Ohio St.3d 56, 62 (1990).

{¶ 24} A party who seeks to maintain a class action must affirmatively demonstrate compliance with Civ.R. 23. *Id.*, citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013), citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Civ.R. 23(A) sets out the prerequisites to maintaining a class action as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) The class is so numerous that joinder of all members is impracticable;
>
> (2) There are questions of law or fact common to the class;
>
> (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class;
>
> (4) The representative parties will fairly and adequately protect the interests of the class.

Upon satisfaction of the prerequisites stated in Civ.R. 23(A), a class action may be maintained if one of the requirements listed in Civ.R. 23(B)(1) through (3) is also satisfied.

{¶ 25} Kacin argued in his motion for class certification that certification was warranted under both Civ.R. 23(B)(1)(b) and (B)(3). Under those provisions, a class action may be maintained if Civ.R. 23(A) is satisfied and if:

(1) Prosecuting separate actions by or against individual class members would create a risk of:

. . .

(b) Adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; or

. . .

(3) The court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

{¶ 26} The party requesting class certification bears the burden of demonstrating by a preponderance of the evidence that the proposed class meets all the requirements set out in Civ.R. 23. *Cullen* at ¶ 15, citing *Warner v. Waste Mgt., Inc.*, 36 Ohio St.3d 91, 94 (1988). The Supreme Court has summarized the requirements for class certification as follows:

(1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met.

*Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 71 (1998), citing Civ.R. 23(A) and (B) and *Warner*.

{¶ 27} A trial court faced with a motion to certify a class must carefully apply the class-action requirements and "conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied." *Id.* at 70. The court must "resolve factual disputes relative to each requirement and . . . find, based upon those determinations, other relevant facts, and the applicable legal standard, that the requirement is met." *Cullen* at ¶ 16, citing *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 2006-Ohio-5339, ¶ 20, citing *Hamilton* at 70. A trial court may examine the underlying merits of the claim as part of its rigorous analysis,

but only to the extent necessary to determine whether a requirement under Civ.R. 23 has been satisfied. *Id.* at ¶ 17, citing *Wal-Mart* at 350-351.

{¶ 28} The Court of Claims determined that Kacin did not establish by a preponderance of the evidence each of the requirements for class certification under Civ.R. 23(A) and (B). It held that Kacin did not satisfy the identifiability requirement implicit in Civ.R. 23(A) with respect to the first subclass identified in Kacin's proposed class—100 percent disabled veterans who paid registration fees and/or taxes on or after October 17, 2019 for a specialty military license plate, for which registration taxes and fees should have been waived pursuant to R.C. 4503.29(D)(2)(b) (the "proposed class"). The Court of Claims also concluded that Kacin did not demonstrate the applicability of Civ.R. 23(B)(1) or (3). Kacin challenges each of the supposed shortcomings identified by the Court of Claims.

**B. Standard of review**

{¶ 29} A trial court has broad discretion in determining whether to certify a class action, and an appellate court will not disturb the trial court's decision absent an abuse of discretion. *Madyda v. Ohio Dept. of Pub. Safety*, 2021-Ohio-956, ¶ 8 (10th Dist.), citing *Marks v. C.P. Chem. Co.*, 31 Ohio St.3d 200 (1987), syllabus. An abuse of discretion connotes conduct that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The deferential abuse of discretion standard appropriately applies to the question of class certification "due to the trial court's 'special expertise and familiarity with case-management problems and its inherent power to manage its own docket.' " *Cicero v. U.S. Four, Inc.*, 2007-Ohio-6600, ¶ 9 (10th Dist.), quoting *Hamilton* at 70. A trial court's discretion, however, is not unlimited; it is "bounded by and must be exercised within the framework of Civ.R. 23." *Hamilton* at 70. " 'A determination by a trial court regarding class certification that is clearly outside the boundaries established by Civ.R. 23, or that suggests that the trial court did not conduct a rigorous analysis into whether or not the prerequisites of Civ.R. 23 are satisfied, will constitute an abuse of discretion.' " *Id.* at 10, quoting *Hansen v. Landaker*, 2000 Ohio App. LEXIS 5680, *7 (10th Dist. Dec. 7, 2000), citing *Hamilton* at 70.

{¶ 30} With these rules and the applicable standard of review in mind, we now turn to Kacin's assignments of error, beginning with his second.

### C. Assignment of Error No. 2

{¶ 31} In his second assignment of error, Kacin challenges the Court of Claim's determination that the proposed class is not identifiable. Civ.R. 23 requires, albeit implicitly, that an identifiable and unambiguously defined class exists.[3] *Warner* at 96. Identifiability is necessary "because it allows a trial court effectively to evaluate the explicit requirements" of Civ.R. 23. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 162 (3d Cir. 2015)

{¶ 32} A class will not be deemed satisfactorily identifiable unless its description " 'is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member' " of the class. *Hamilton*, 82 Ohio St.3d at 71-72, citing 7A Wright, Miller & Kane, *Federal Practice and Procedure*, § 1760, at 120-121 (2d Ed. 1986). In other words, "the class must be defined with enough precision to 'permit identification within a reasonable effort.' " *Hansen* at *9, quoting *Warner* at 96. The Supreme Court has offered examples of classes that would not meet the identifiability requirement: "Classes such as 'all people active in the peace movement,' 'all people who have been or may be harassed by the police' and 'all poor people,' are too amorphous to permit identification within a reasonable effort and thus may not be certified." *Warner* at 96.

{¶ 33} Civ.R. 23 does not require a class certification to identify the individuals who are members of the class, but it must specify means to identify who is a member. *Planned Parenthood Assn. of Cincinnati*, 52 Ohio St.3d at 63. "The test is whether the means is specified at the time of certification to determine whether a particular individual is a member of the class." *Id.* In other words, at the certification stage, "a plaintiff need only show that 'class members *can* be identified.' " (Emphasis added.) *Byrd* at 163, quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 308, fn. 2 (3d Cir. 2013). For purposes of identifiability, the focus is on how the class is defined. *Hamilton* at 73. "[W]hether there are differing factual and legal issues 'does not enter into the analysis until the court begins to consider the Civ.R. 23(B)(3) requirement[s] of predominance and superiority.' " *Id.*, quoting *Marks* at 202. *See also Clark v. Park 'n Fly*, 2011-Ohio-323, ¶ 18 (8th Dist.) (The identifiability requirement "is not to be confused with the predominance requirement in

---

[3] Some courts refer to this requirement as ascertainability. *See, e.g.*, *Byrd v. Aaron's Inc.*, 784 F.3d 154, 161, fn. 4 (3d Cir. 2015); *Winrod v. Lorain*, 2020-Ohio-157, ¶ 4 (9th Dist.).

Civ.R. 23(B)(3), which inquires whether 'separate adjudications are likely required to finally determine the action.' "), quoting *Hamilton* at 73.

{¶ 34} The Court of Claims held, and the BMV has not challenged, that Kacin's proposed class was unambiguously defined, but the trial court held that the unambiguously defined class was not identifiable. The Court of Claims acknowledged that the BMV has already identified a portion of the defined class—those 100 percent service-connected disabled veterans who purchased a specialty military license plate *and who also received a disabled veteran license plate*—and refunded to those veterans the improperly charged taxes and fees for the specialty military license plate. And the Court of Claims rejected the BMV's argument that the proposed class is not identifiable because BMV could not identify the remaining members of the proposed class—those who did not also receive a disabled veteran license plate—solely from its own records. The Court of Claims acknowledged that remaining members of the putative class need not be identified in BMV's own records, but it questioned the administrative feasibility of other methods for identifying remaining class members, including Kacin's proposed method of allowing individuals to self-identify by affidavit.

{¶ 35} Membership in the proposed class requires two things—purchase of a specialty military license plate and status as a 100 percent service-connected disabled veteran. As the Court of Claims aptly recognized, the first requirement can be demonstrated through the BMV's records, which include purchase data related to all specialty military license plates issued during the operative timeframe. All members of the proposed class necessarily fall within that universe of individuals who purchased a specialty military license plate. The question thus becomes whether the proposed class, as defined, provides a means for determining which of those individuals who purchased a specialty military license plate between October 17, 2019 and April 30, 2023 are 100 percent service-connected disabled veterans who were, therefore, qualified to receive their registration and specialty military license plate free of charge.

{¶ 36} Kacin proposed a method of allowing those individuals who purchased a specialty military license plate and who claim to have been entitled to that plate free of charge by virtue of a 100 percent service-connected disability to self-identify into the class by filing an affidavit attesting to their disability status. Using BMV's records, notice of the

proposed class and litigation would be given to all individuals who purchased a specialty military license plate between October 17, 2019 and April 30, 2023, when the BMV fully implemented R.C. 4503.29(D)(2)(b). An individual who claims he or she was entitled to receive their specialty military license plate free of charge under R.C. 4503.29(D)(2)(b) could then self-identify as a class member by submitting an affidavit with evidence of a 100 percent service-connected disability. Currently, when a disabled veteran requests a free specialty military license plate from a deputy registrar, the veteran must demonstrate their eligibility by producing a copy of their VA letter, establishing that they are 100 percent service-connected disabled, and their DD-214 form. The Court of Claims could require an individual claiming membership in the class to submit the same documentation of eligibility with his or her self-identifying affidavit.

{¶ 37} Other courts have approved the use of self-identifying affidavits for ascertaining membership in a class. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 669 (7th Cir. 2015) ("a district judge has discretion to allow class members to identify themselves with their own testimony and to establish mechanisms to test those affidavits as needed"); *Reyes v. BCA Fin. Servs.*, 2018 U.S. Dist. LEXIS 106449 (S.D. Fl. June 26, 2018) ("there is no categorical prohibition against using affidavits for identification purposes"). In *Byrd*, the Third Circuit noted its prior caution against a method of identification " ' "that would amount to no more than ascertaining [class membership] by potential class members' say so." ' " *Byrd* at 164, quoting *Carrera* at 306, quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012). But the Third Circuit has since clarified that its precedents "do not categorically preclude affidavits from potential class members" for use in satisfying the identifiability requirement. *City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434, 440 (3d Cir. 2017). In *City Select Auto Sales, Inc.*, the defendant's records identified and limited the universe of potential claimants, thereby allowing for direct notice to potential class members. *Id.* at 441. The Third Circuit explained:

> [T]he [defendant's] database defines a limited set of potential claimants. The only factual inquiry required to determine class membership is whether a particular dealership in the database received the BMW fax on one of the dates in question. Answering this factual question of identification through affidavits or other available records does not necessarily require individualized fact-finding that would be

"administratively infeasible" or "a violation of Defendants' due process rights." *See Byrd*, 784 F.3d at 170.

*Id*. at 442.

{¶ 38} Here, the proposed class includes objective criteria by which a court could determine with reasonable effort whether an individual qualifies as a member of the class. In *Hansen*, this court recognized that membership in the putative class, as defined, was limited and that individual class members would be identifiable by asking purported class members two questions—whether they purchased K.G. Marx stock or promissory notes and, if so, whether they purchased them through the 1995 public offering. *Hansen* at \*9. As such, we concluded that the identifiability requirement for class certification was met. Similarly here, the universe of potential class members is limited by the BMV's records, which identify all individuals who purchased a specialty military license plate during the operative time frame, and with reasonable effort each potential class member may be directly notified of the proposed class. To determine who among the individuals identified from the BMV's records is a member of the proposed class, potential class members would need only be asked if, at the time they purchased a specialty military license plate, they were a 100 percent service-connected disabled veteran, which they could objectively prove by submission of their VA letter. Accordingly, we conclude that the definition of the purported class provides a reasonably workable means of determining whether a particular individual qualifies as a member of the class.

{¶ 39} In holding otherwise, the trial court found persuasive the Eighth District Court of Appeals' analysis in *Clark*, 2011-Ohio-323 (8th Dist.). Clark alleged that he parked his vehicle at Park 'N Fly's parking facility in Cleveland because it advertised a free car wash, but he did not receive the car wash because the car wash was inoperable. Clark sought certification of a class defined as "[a]ll individuals similarly situated who (i) utilized Park 'N Fly's facilities in Cleveland, Ohio, (ii) who were denied the advertised free car wash (iii) in the two years preceding the filing of the [class action] complaint[.]" *Id*. at ¶ 6. The trial court denied class certification, and the Eighth District affirmed the trial court's judgment. First, the Eighth District noted that Park 'N Fly's business records did not identify all parkers who utilized Park 'N Fly's Cleveland facility during the operative time frame. Rather, "Park 'N Fly's 'readily obtainable' business records would only show certain

customers — those who were frequent flyers, registered in advance, or paid by credit card — who used Park 'N Fly's facility within the two-year period." *Id.* at ¶ 22. It went to state, "in order for Park 'N Fly's customers to have been 'denied' a car wash, they would have had to have wanted a car wash, parked there because of the advertised 'free car wash,' and then been denied a car wash because the car wash was inoperable." *Id.* at ¶ 23. The Eighth District reasoned that the definition of a class may not properly depend upon prospective members' states of mind, and it held that the trial court did not abuse its discretion by determining that it could not with reasonable effort determine who is a member of the class. The same infirmities do not exist here.

{¶ 40} First, unlike in *Clark,* the universe of potential class members is readily identifiable from the BMV's business records, which identify all purchasers of specialty military license plates. More importantly, in *Clark,* whether a customer wanted a car wash, parked at Park 'N Fly because of the advertised car wash, and did not receive a car wash, were built into the *definition of the class,* which included only customers who had been "denied" a car wash. In contrast, the proposed class here requires only that a class member purchased a specialty military license plate when the class member was a 100 percent service-connected disabled veteran who, by virtue of that status, was statutorily eligible to receive that license plate free of charge. As already stated, notice can be provided to every potential class member who purchased a specialty military license plate, who may then self-identify, with objective proof as required by the Court of Claims, if they were a 100 percent service-connected disabled veteran when they purchased their plate. Those veterans who provide objective proof of a 100 percent service-connected disability, making them eligible for a free specialty military license plate at the time BMV charged them, are members of the proposed class. Qualification for membership in the proposed class does not depend upon the prospective class member's state of mind.

{¶ 41} The Court of Claims reasoned that individualized analysis would be required of each veteran who paid for a specialized military license plate, but who was eligible to receive that plate free of charge, to determine whether the veteran was harmed and the BMV unjustly enriched. The Court of Claims stated that, before being entitled to the specialty military license free of charge, an eligible veteran would have had to present to the deputy registrar an application, with sufficient documentation of disability. That analysis,

however, goes beyond determining whether the class is identifiable. To the extent questions of class members' knowledge of the specialty military license plate program, their intent to utilize the program by supplying satisfactory evidence of disability, and their interactions with the BMV are relevant at all, they relate to the question of predominance, not the question of class identifiability. As the Third Circuit cautioned in *Byrd* when distinguishing the ascertainability and predominance inquiries: " ' "[T]he ascertainability requirement focuses on whether individuals fitting the class definition may be identified without resort to mini-trials, whereas the predominance requirement focuses on whether essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence." ' " *Byrd* at 164, quoting *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 184 (3d Cir. 2014), quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 359 (3d Cir. 2013). For these reasons, we find the Court of Claim's reliance on *Clark* misplaced.

{¶ 42} The proposed class is unambiguously defined by objective criteria, and membership in that class can reasonably be determined by reference to objective evidence. BMV's admission that it was able to identify and refund some class members suggests that the class, as proposed, is defined by objective and identifiable criteria and does not depend on the person's subjective state of mind. Indeed, in refunding class members who had purchased a specialty military license plate and had also received a disabled veteran license plate, the BMV did not inquire whether those veterans knew of their eligibility to receive the specialty military license plate without charge or whether they requested a fee waiver with respect to the specialty military license plate. All it required was proof that the purchaser was 100 percent service-connected disabled at the time they applied for the specialty miliary license plate. As to those veterans, the BMV already has proof of a 100 percent service-connected disability. Allowing veterans who have not already provided such proof to the BMV to provide it now, via affidavit, does not make the proposed class any less identifiable. Just as the BMV has identified some members of the class by objective evidence already in its possession, the remainder of the class may be identified by objective evidence submitted by affidavit, in conjunction with the BMV's own records.

{¶ 43} For these reasons, we agree with Kacin that the proposed class is identifiable with reasonable effort and that the Court of Claims abused its discretion by holding otherwise. We therefore sustain Kacin's second assignment of error.

### D. Assignment of Error No. 3

{¶ 44} In his third assignment of error, Kacin argues that the Court of Claims erred by concluding that he did not satisfy Civ.R. 23(B)(1)(b), which permits class certification if separate actions would create a risk of adjudications that would, as a practical matter, be dispositive of non-parties' claims or would substantially impair or impede non-parties' ability to protect their interests. *See Warner*, 36 Ohio St.3d at 95. Civ.R. 23(B)(1)(b) applies to situations in which "separate actions could lead to incompatible standards of *conduct*" for the defendant. (Emphasis in original.) *Id.*

{¶ 45} The Court of Claims held that resolution of any individual putative class member's claim would not, as a practical matter, be dispositive of or impair or impede other putative class members' claims. It cited *Dery v. Lake Volkswagen, Inc.*, 1978 Ohio App. LEXIS 10039 (8th Dist. Mar. 30, 1978), in which the court of appeals rejected a plaintiff's argument that precedent established by the prosecution of her individual case could foreclose the interests of other putative class members, based on application of res judicata or collateral estoppel. The Eighth District, however, stated, "If an adverse decision binds the members of an established class, an adverse decision in individual litigation could hardly result in more binding consequences." *Id.* at *10. More recently, the Supreme Court of Ohio has similarly stated, " '[N]either the stare decisis consequences of an individual action nor the possibility of false reliance upon the improper initiation of a class action can supply either the practical disposition of the rights of the class, or the substantial impairments of those rights, at least one of which is required by [Fed.R.Civ.P.] 23(b)(1)(B).' " *State ex rel. Davis*, 2006-Ohio-5339, ¶ 50, quoting *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 465 (9th Cir. 1973).

{¶ 46} In *Warner,* the Supreme Court of Ohio favorably cited legal scholarship likening Civ.R. 23(B)(1)(b) "to interpleader suits where only a limited amount of money is available and there is a risk that separate actions would deplete the fund before all deserving parties could make a claim." *Warner* at 95, citing Miller, *An Overview of Federal Class Actions: Past, Present and Future*, at 45 (2d Ed. 1977). Since then, the Supreme Court has

generally rejected use of Civ.R. 23(B)(1)(b) except in cases involving a limited fund to pay claims. It has stated, "Subdivision (B)(1)(b) is usually used in cases in which claims are made by numerous persons against funds insufficient to satisfy all claims." *Planned Parenthood Assn. of Cincinnati*, 52 Ohio St.3d at 66, citing *Warner* at 95. In *Planned Parenthood Assn. of Cincinnati*, the court rejected reliance on Civ.R. 23(B)(1)(b), summarily declaring, "[t]he instant case does not involve a limited fund." *Id. See also, Marks* at 203 (class certification properly denied under Civ.R. 23(B)(1)(b) where plaintiff did not present evidence that early litigants would deplete the fund available to pay later successful claimants). This court too has stated that Civ.R. 23(B)(1)(b) requires a party relying on it "to 'establish, by specific evidence, that the total of the aggregated liquidated claims and the fund available for satisfying them, set definitely at the maximum, demonstrate the inadequacy of the fund to pay all claims.' " *Searles v. Germain Ford of Columbus, L.L.C.*, 2009-Ohio-1323, ¶ 13 (10th Dist.), quoting *In re Rogers Litigation*, 2003-Ohio-5976, ¶ 40 (6th Dist.), citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 838 (1999).

{¶ 47} Because this is not a case involving a limited fund and because separate actions would not create a risk of incompatible standards of conduct for the BMV, we overrule Kacin's third assignment of error.

### E. Assignment of Error No. 4

{¶ 48} In his fourth assignment of error, Kacin argues the Court of Claims erred by finding a lack of predominance under Civ.R. 23(B)(3), which allows a trial court to certify a class action when the requirements of Civ.R. 23(A) have been satisfied and when "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

{¶ 49} Civ.R. 23(B)(3) "bring[s] within the fold of maintainable class actions cases in which the efficiency and economy of common adjudication outweigh the interests of individual autonomy." *Hamilton*, 82 Ohio St.3d at 80. Civ.R. 23(B)(3) " 'was expected to be particularly helpful in enabling numerous persons who have small claims that might not be worth litigating in individual actions to combine their resources and bring an action to

vindicate their collective rights.' " *Id.*, quoting 7A Wright, Miller & Kane, *Federal Practice and Procedure*, § 1777, at 518 (2d Ed. 1986). That is precisely the scenario presented here.

{¶ 50} To certify a class under Civ.R. 12(B)(3), the trial court must find two additional elements—predominance and superiority. *Warner* at 96. The trial court here found lacking only the element of predominance.

{¶ 51} Under Civ.R. 23(B)(3), the court must "balance questions common among class members with any dissimilarities between them" to determine whether common questions predominate. *Cullen*, 2013-Ohio-4733, at ¶ 29. The BMV does not challenge the Court of Claim's finding that this case involves questions of law or fact common to the proposed class, *see* October 23, 2024 Decision, but it argues that the Court of Claims properly determined that those common questions do not predominate over questions affecting only individual class members. " 'For common questions of law or fact to predominate, . . . they must present a significant aspect of the case [and] be capable of resolution for all members in a single adjudication.' " *Id.* at ¶ 30, quoting *Marks*, 31 Ohio St.3d at 204. "[I]f the court is satisfied that common questions predominate, it then should 'consider whether any alternative methods exist for resolving the controversy and whether the class action is in fact superior.' " *Id.* at ¶ 29, quoting *Ealy v. Pinkerton Govt. Servs., Inc.*, 514 Fed. Appx. 299 (4th Cir. 2013).

{¶ 52} The predominance requirement under Civ.R. 23(B)(3) is more demanding than the commonality requirement under Civ.R. 23(A). *Cross v. Univ. of Toledo*, 2022-Ohio-3825, ¶ 30 (10th Dist.), citing *Comcast Corp.*, 569 U.S. at 34. "The predominance discussion should build upon the identified 'questions of law or fact common to the class' under Civ.R. 23(A)(2), requiring an analysis of how those questions 'predominate over any questions affecting only individual members[.]' " *Id.* As part of its rigorous analysis of predominance under Civ.R. 23(B)(3), the trial court "must identify the plaintiff's theory of injury and explain how it will be proved." *Id.* at ¶ 34.

{¶ 53} Kacin alleges the BMV was unjustly enriched when it accepted payment from 100 percent service-connected disabled veterans for specialty military license plates, for fees and taxes which he maintains the BMV was not statutorily entitled to charge. "Unjust enrichment occurs when a person 'has and retains money or benefits which in justice and equity belong to another.' " *Johnson v. Microsoft Corp.*, 2005-Ohio-4985, ¶ 20, quoting

*Hummel v. Hummel*, 133 Ohio St. 520, 528 (1938). To succeed on a claim for unjust enrichment, a plaintiff must show that the plaintiff conferred a benefit on the defendant, that the defendant knew of the benefit, and that the defendant retained the benefit when it was unjust to do so without payment. *Bunta v. Superior VacuPress, L.L.C.*, 2022-Ohio-4363, ¶ 36. "[I]n assessing whether an unjust or unconscionable benefit has been received by a defendant, the court must consider whether the defendant was the party responsible for the plaintiff's detrimental position." *United States Health Practices v. Blake*, 2021 Ohio App. LEXIS 1291, *6 (10th Dist. Mar. 22, 2001), citing *Mason v. Walker*, 1995 Ohio App. LEXIS 5536 (3d Dist. Dec. 5, 1995). Recovery for unjust enrichment does not depend upon the parties' intentions. *Girard v. Leatherworks Partnership*, 2005-Ohio-4779, ¶ 41 (11th Dist.).

{¶ 54} In its memorandum in opposition to Kacin's motion for class certification, the BMV argued that the Court of Claims would need to make individualized inquiries to determine whether each individual claimant is a veteran, whether each veteran was an eligible veteran, when each eligible veteran qualified for a free specialty military license plate, whether each eligible veteran was aware of the specialty military license plate program, and whether each eligible veteran presented documentation of eligibility to a deputy registrar. Many of those inquires, however, will be eliminated by determination of the class itself. As stated in our analysis of identifiability, BWC's records will initially limit the universe of potential class members to those individuals who purchased a specialty military license plate prior to the BMV's implementation of R.C. 4503.29(D)(2)(b). Only those individuals identified by BWC's records as having purchased a specialty military license plate who also present evidence of a 100 percent service-connected disability will be members of the proposed class. Thus, every member of the class will be a 100 percent service-connected disabled veteran who was statutorily eligible to receive a specialty military license plate free of charge. The question under Civ.R. 23(B) is whether questions of law or fact common *to class members* predominate over any questions affecting only individual members; questions about the makeup of the class itself do not defeat predominance.

{¶ 55} The overarching legal question concerning the BMV's failure to timely implement the specialty military license plate program under R.C. 4503.29 is common to

the claims of all class members and is the basis for the class's claims of unjust enrichment. And indeed, the BMV has conceded that it "did not implement a change in Ohio law that allows certain disabled veterans to receive up to two free . . . [specialty] military license plates" and that it "improperly charged" certain veterans for specialty military license plates during its failure to implement that change. (Riggins Dep., Ex. 2.) Nevertheless, the Court of Claims held that Kacin did not meet his burden of showing the existence of injury on a class-wide basis.

{¶ 56} In support of its decision, the Court of Claims cited *Cross*, in which this court stated, "Plaintiffs in class-action suits must demonstrate that they can prove, through common evidence, that all class members were in fact injured by the defendant's actions." *Cross*, 2022-Ohio-3825, at ¶ 34 (10th Dist.). It also cited *Duke v. Ohio Univ.*, 2022-Ohio-4694, ¶ 42 (10th Dist.), for the proposition that, " '[i]f the class plaintiff fails to establish that all of the class members were damaged (notwithstanding questions regarding the individual damages calculations for each class members), there is no showing of predominance under Civ.R. 23(B)(3).' " *Id.*, quoting *Felix v. Ganley Chevrolet, Inc.*, 2015-Ohio-3430, ¶ 35. The Court of Claims reasoned that "the primary concern for the predominance requirement" is whether BMV's retention of registration taxes and fees for specialty military license plates from class members is unjustified, "because it relates directly to determination of injury and damages." (Oct. 23, 2024 Decision at 33.)

{¶ 57} The Court of Claims stated, "it would not be unconscionable for [the BMV] to fully retain the specified registration taxes or fees for providing a specialty military license if the 100 percent service-connected disabled military veteran [to whom it was provided] was unaware of their statutory eligibility, did not intend to utilize the benefit, and/or did not provide the deputy registrar with satisfactory evidence of disability. *Id.* In other words, the Court of Claims reasoned that the BMV may justifiably retain taxes and fees it charged some 100 percent service-connected disabled military veterans who were statutorily eligible to receive a specialty military license plate free of charge. We disagree.

{¶ 58} Whether putative class members knew of the amendment to R.C. 4503.29, which extended to them entitlement to a specialty military license plate without charge, has no bearing on whether the BMV was unjustly enriched by collecting registration taxes and fees from disabled veterans who were not required to pay those taxes and fees. Effective

October 17, 2019, the General Assembly provided that, upon application for a specialty military license plate under R.C. 4503.29, a qualified disabled veteran under R.C. 4503.41 "*is not required to pay*" registration taxes or fees for the specialty military license plate. (Emphasis added.) R.C. 4503.29(D)(2)(b). As defined in Kacin's motion for class certification, *all* members of the proposed class are 100 percent service-connected disabled military veterans who qualified for a free specialty military license plate, but who were charged and paid registration taxes and fees they were "not required to pay" under R.C. 4503.29.

{¶ 59} Prior to April 30, 2023, the BMV did not inform applicants for a specialty military license plate, either in person or through its website, that the specialty military license plate was available free of charge to eligible disabled veterans. To the contrary, the BMV actively denied eligible disabled veterans, like Kacin, the free registration and specialty military license plate to which they were entitled under R.C. 4503.29.

{¶ 60} We disagree with the Court of Claim's statement, "it would not be unconscionable" for the BMV to retain registration taxes or fees collected from a 100 percent service-connected disabled veteran if "the veteran did not *intend* to utilize the Specialty Military License Plate Program by providing the necessary application and satisfactory evidence of disability." (Oct. 23, 2024 Decision at 33.) Recovery for unjust enrichment does not depend on the parties' intentions. *Girard*, 2005-Ohio-4779, at ¶ 41 (11th Dist.). Further, by its own inaction in the face of the General Assembly's statutory mandate, the BMV essentially denied putative class members the ability to make the choice it now seeks to require putative class members to prove they made. The BMV may not use its own failure to implement the specialty military license plate program, including its provision for free plates to 100 percent service-connected disabled veterans, as a shield to liability to those disabled veterans it unlawfully charged for specialty military license plates, contrary to the General Assembly's stated intent.

{¶ 61} BMV's actions in refunding those veterans who purchased a specialty military license plate but who also received a disabled veteran license plate supports the conclusion that individual inquiry is not required to determine that BMV's retention of the monies paid by 100 percent service-connected veterans for specialty military license plates is unjust. The BMV did not question whether a veteran who purchased a specialty military license

plate and who also received a disabled veteran license plate was aware of the amendment to R.C. 4503.29, which entitled the veteran to the specialty military license plate free of charge or whether the veteran intended to make use of that entitlement. Instead, the BMV refunded the charges for the specialty military license plate as a matter of course. There is no reason to impose an additional individual inquiry on remaining eligible veterans who paid for a specialty military license plate to determine that BMV's retention of those payments is unjust.

{¶ 62} Having determined that the Court of Claims erroneously held that individual questions of fact regarding class members' knowledge and intentions would predominate over the common questions of law and fact applicable to the proposed class as a whole, we sustain Kacin's fourth assignment of error.

### F. Assignment of Error No. 1

{¶ 63} Finally, we return to Kacin's first assignment of error, which broadly states that the Court of Claims erred by overruling his motion for class certification. Because we have concluded that the Court of Claims abused its discretion by holding that the proposed class is not identifiable and that Kacin failed to meet his burden of showing preponderance under Civ.R. 23(B)(3), we likewise conclude that the Court of Claims more generally abused its discretion in denying the motion for class certification. We therefore sustain Kacin's first assignment of error.

## V. CONCLUSION

{¶ 64} Having sustained Kacin's first, second, and fourth assignments of error and having overruled Kacin's third assignment of error, we reverse the judgment of the Court of Claims of Ohio and remand this matter to that court for further proceedings consistent with this decision and the law.

*Judgment reversed;*
*cause remanded.*

BEATTY BLUNT and LELAND, JJ., concur.

———————